**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Kevin JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Argued March 21, 2012.

Filed Aug. 15, 2012.

Margaret Flores, Philadelphia, for appellant.

Jeffrey Krulik, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BOWES, GANTMAN, PANELLA, SHOGAN, ALLEN, LAZARUS, MUNDY, AND WECHT, JJ.

OPINION BY MUNDY, J.:

Appellant, Kevin Johnson, appeals from the July 15, 2009 order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546. After careful review, we affirm.

The PCRA court summarized the relevant facts of this case as follows.

[On October 8, 1986, the victim], Lyndon "Cowboy" Morris, was selling cocaine from a second-floor bedroom that he rented in a home in southwest Philadelphia. He was assisted by one James Smith who would answer the door at the residence, collect money from the prospective purchasers, give the money to [Appellant] who was positioned in the second-floor bedroom, and then deliver the cocaine to the buyers who were waiting on the first floor.

The owner of the residence, Opal Nickson, arrived home that night and joined Angelo Smith, Elijah Bennett, and James Smith in another second-floor bedroom where they were all smoking marijuana and cocaine. In response to a

knock on the door, James Smith went downstairs and encountered [Appellant] who was armed with a revolver and his accomplice who was carrying a sawed-off shotgun. [Appellant] demanded to see [Morris], and when the three of them reached the second floor, [Appellant] ordered Nickson, Angelo Smith, and Bennett to lie on the floor. Both Nickson and Bennett (along with the Smiths) identified [Appellant] at trial, and testified that they recognized him "from the neighborhood[.]"[ ]

With the accomplice standing by, [Appellant] banged on [Morris'] door. When he unlatched the door and saw the shotgun, he attempted to slam the door shut. [Morris] was unsuccessful in that effort, and the accomplice fired through the open door and struck [Morris] in the lower abdomen. [Appellant] then rushed into the bedroom, fired his gun a number of times, and shot [Morris] in the chest while he was lying on the ground. After scooping up [Morris'] cash and drugs, [Appellant] and his accomplice ran out of the house and fled.

[A seven-day jury trial began on January 27, 1988. During the trial Stephen Gallagher, Esquire, (Attorney Gallagher), Appellant's] trial counsel[,] called a number of alibi witnesses, Douglas Yancy, James Lawrence, and Wanda Johnson, in his effort to establish that [Appellant] was selling clothes from the back of a car at various locations in West Philadelphia. His mother and a family member gave testimony that contradicted the Commonwealth['s] witnesses who had described what he was wearing and the vehicle in which he was riding. [Appellant] also testified at trial on his own behalf. He denied being involved in the shooting or robbery of [Morris], and recounted his actions that evening as he traveled around the neighborhood with a friend while attempting to sell clothes.

PCRA Court Opinion, 7/7/10, at 5–6.

On February 4, 1988, the jury convicted Appellant of first-degree murder. The following day, the trial judge concluded that the Commonwealth had failed to establish the aggravating circumstance of endangerment of another person, and held that it would be illegal for the jury to consider the death penalty. On July 1, 1988, Appellant was sentenced to life imprisonment.

Attorney Gallagher filed a timely notice of appeal. The trial court ordered Attorney Gallagher to file a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Attorney Gallagher failed to file a Rule 1925(b) statement and brief with this Court. Due to these failures, this Court dismissed the appeal. On March 11, 1991, Appellant filed a petition under the PCRA requesting restoration of his direct appeal rights *nunc pro tunc.* The Commonwealth did not object. On March 25, 1991, the trial court granted Appellant *nunc pro tunc* relief, and appointed Jaime Smarro, Esquire (Attorney Smarro) to represent him on direct appeal. On March 4, 1992, this Court affirmed the judgment of sentence. *Commonwealth v. Johnson,* 610 A.2d 65 (Pa.Super.1992) (unpublished memorandum). Our Supreme Court denied Appellant's petition for *allocatur* on September 30, 1992.

Thereafter, Appellant filed a timely *pro se* PCRA petition on December 23, 1996.[1]

---

1. Although four years passed between Appellant's judgment of sentence becoming final and his first PCRA petition, his petition was nevertheless timely. The 1995 amendments to the PCRA put into place the current one-year time bar. The 1995 amendments also granted prisoners whose judgment of sentence had become final more than one year

Counsel was appointed to represent Appellant, but failed to file an amended PCRA petition. The trial court subsequently appointed another attorney, who filed an amended petition on June 12, 2002 averring various claims of ineffective assistance of counsel. Appellant's PCRA petition was dismissed without a hearing on January 15, 2003. On January 31, 2005, this Court reversed the PCRA court's order and remanded with instructions to conduct an evidentiary hearing on the issue of whether Attorney Gallagher was ineffective for failing to consult with Appellant prior to trial. *Commonwealth v. Johnson,* 873 A.2d 768 (Pa.Super.2005) (unpublished memorandum).

On remand, the PCRA court conducted two hearings on March 6, 2006 and April 17, 2006.[2] The matter was transferred to the Honorable Peter Rogers because the original PCRA judge was no longer sitting on the trial bench.[3] On June 17, 2009, pursuant to Pennsylvania Rule of Criminal Procedure 907, the PCRA court advised Appellant that his petition was going to be denied because the PCRA court found that the issues he raised lacked merit. The PCRA court formally entered an order denying relief on July 15, 2009.

Appellant filed a timely notice of appeal on July 23, 2009.[4] On June 27, 2011, a divided panel of this Court reversed the PCRA court's order, vacated the judgment of sentence, and remanded the matter for a new trial. *Commonwealth v. Johnson,* 2187 EDA 2009 (Pa.Super.2011) (unpublished memorandum). The panel majority found that Attorney Gallagher had rendered ineffective assistance of counsel under *Commonwealth v. Brooks,* 576 Pa. 332, 839 A.2d 245 (Pa.2003). The dissent argued *Brooks* did not control the outcome of the case, Attorney Gallagher provided Appellant with effective representation, and Appellant could not show that he was prejudiced under *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (Pa.1987). On July 11, 2011, the Commonwealth filed a petition for reargument en banc. On August 29, 2011, this Court granted the Commonwealth's motion for reargument and withdrew the June 27, 2011 panel memorandum.

In his substituted brief on reargument, Appellant raises the following issues for our review.

1. Should reargument *en banc* be dismissed as improvidently granted?

---

before the implementation of the time-bar, one year from the effective date of the amendments to file their first PCRA petition. Act of November 17, 1995, P.L. 1118, No. 32 (Spec.Sess. No. 1), § 3(1). Under this provision "a petitioner's first PCRA petition, that would otherwise be considered untimely because it was filed more than one year after the judgment of sentence became final, would be deemed timely if it was filed by January 16, 1997." *Commonwealth v. Thomas,* 718 A.2d 326, 329 (Pa.Super.1998) *(en banc).* Following this interpretation, since Appellant's petition was filed before January 16, 1997, it was properly considered timely filed.

2. Attorney Gallagher passed away in 2005, before the evidentiary hearings. N.T., 3/6/06, at 71. While this makes Appellant's burden of proving ineffective assistance more diffi-

cult, that burden is not reduced. *See Commonwealth v. Steele,* 599 Pa. 341, 961 A.2d 786, 820 (2008) (stating that although one attorney has died and another attorney's memory of events has diminished with the passage of time, an appellant's burden "is not obviated or lessoned [sic][ ]") (citation omitted).

3. This case was originally assigned to the Honorable James J. Fitzgerald, III, who was then sitting on the Court of Common Pleas. In 2007, Justice Fitzgerald was appointed to our Supreme Court. He is currently serving as a senior judge specially assigned to this Court.

4. Appellant and the trial court have timely complied with Pa.R.A.P. 1925.

2. Due to court error, prosecutorial misconduct and ineffective assistance of trial and appellate counsel, was Appellant denied a fair trial?

A. Is Appellant entitled to relief under the authority of *Commonwealth v. Brooks* [576 Pa. 332], 839 A.2d 245 (Pa.2003) and *Strickland v. Washington*, 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984) where counsel failed to ever meaningfully consult with his client prior to trial, and was appellate counsel ineffective for failing to raise this claim?

B. Did Appellant plead and prove that counsel's deficient performance, prosecutorial misconduct, and court error, and resulting prejudice, undermined the reliability of Appellant's conviction, entitling him to a new trial, and did the PCRA court abuse its discretion in denying, as previously agreed to, a hearing on these issues?

 i. Was Appellant denied effective assistance of counsel where trial counsel failed to investigate and present good character testimony relating to Appellant's reputation as peaceful and non-violent, and appellate counsel failed to raise this issue?

 ii. Was Appellant denied the effective assistance of counsel where trial counsel failed to present known alibi evidence, and appellate counsel failed to raise this issue?

 iii. Was Appellant denied his rights to due process of law and confrontation by the improper introduction of hearsay statements, and were prior counsel ineffective for failing to properly preserve this issue at trial and on appeal?

 iv. Was Appellant denied his constitutional rights to due process and effective assistance of counsel due to police misconduct and were prior counsel ineffective for failing to expose, and cross-examine, and pursue this issue on appeal?

 v. Was Appellant denied his constitutional rights to due process and the effective assistance of counsel where trial counsel failed to argue that another suspect was culpable, and appellant counsel failed to raise this issue?

 vi. Was Appellant denied his constitutional right to due process because a key witness's testimony was fabricated due to coercion by the police and were prior counsel ineffective for failing to expose and cross-examine on, this misconduct and to pursue this claim on appeal?

Appellant's Brief at 4.

Prior to addressing Appellant's substantive claims, we must first address Appellant's procedural argument. Appellant avers that the Commonwealth's petition for reargument *en banc* was improvidently granted, and we should reinstate the June 27, 2011 panel decision. *Id.* at 14. When this Court grants rehearing *en banc* it may do so for the following reasons. *See Commonwealth v. Morris*, 958 A.2d 569, 580 n. 2 (Pa.Super.2008), *appeal denied*, 605 Pa. 711, 991 A.2d 311 (2010); *accord Commonwealth v. Jacobs*, 900 A.2d 368, 377 n. 9 (Pa.Super.2006), *appeal denied*, 591 Pa. 681, 917 A.2d 313 (2007).

1. Where it appears that a decision of a panel of the court may be inconsistent with a decision of a different panel of the court;

2. Where it appears that a panel may have overlooked relevant precedent, statute, or rule of court;

3. Where it appears that a panel may have overlooked or misapprehended one or more material facts of record;

4. Where a panel relied upon relevant legal authority which has been reversed, modified, overruled, discredited or materially altered during the pendency of the appeal sub judice; and

5. Where the issues have potential for a significant impact upon developing law or public policy.

Superior Court Internal Operating Procedures § 65.38(B). A majority of this Court's 15 commissioned judges must determine that at least one of these criteria has been met before a case may be heard *en banc*. *Id*. § 65.38(C). Before deciding the merits of an *en banc* case, the *en banc* panel may decide that reargument was improvidently granted. *Id*. § 65.41(C); *see e.g. Commonwealth v. Doria*, 393 Pa.Super. 363, 574 A.2d 653, 657 (1990) (*en banc*) (deciding the original panel decision contained no error in its findings).

In the instant matter, Appellant avers that because five judges of this Court, at some point in time, have agreed with him on some issue, that would constitute an *en banc* majority if all five of them were on this *en banc* panel.[5] Appellant's Brief at 14. Appellant therefore concludes that the panel memorandum should be reinstated because to do otherwise would allow the resolution of this case to "rest on the vagaries of the selection process." *Id*. Appellant fails to point this Court to any authority to support his position. As the Commonwealth points out, Appellant's premise that five judges of this Court have

previously found Attorney Gallagher to be ineffective is not accurate. The 2005 panel decision merely found that Appellant was entitled to an evidentiary hearing because the panel found his claim that Attorney Gallagher never met with him prior to trial presented "a genuine issue of material fact" requiring an evidentiary hearing. *Commonwealth v. Johnson*, 873 A.2d 768, 11 (Pa.Super.2005) (unpublished memorandum). Simply put, the 2005 panel decision did not decide that Attorney Gallagher was ineffective as a matter of law, but rather held that Appellant was entitled to a hearing as a chance to prove that allegation. Furthermore, one judge on the 2005 panel concurred only in the result. *Id*. Even if Appellant's assertions as to the previous panel decisions were true, this Court has never resolved a case based on consideration of the votes of judges from previous panels, who are not sitting on the *en banc* panel. We decline Appellant's invitation to begin using such a method of case resolution now. We therefore conclude *en banc* review was properly granted, and proceed to Appellant's substantive arguments.

■■■■ Turning to Appellant's substantive arguments, we note our well-settled standard of review of a denial of post-conviction relief. "Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Koehler*, —— Pa. ——, 36 A.3d 121, 131 (2012) (citation omitted). "[Our] scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." *Id*. "The PCRA

---

**5.** Appellant acknowledges that three of the five judges he identifies are no longer on this

Court. Appellant's Brief at 15.

court's credibility determinations, when supported by the record, are binding on this Court." *Commonwealth v. Spotz,* 610 Pa. 17, 18 A.3d 244, 259 (2011) (citation omitted). "However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions." *Id.*

 Appellant avers that Attorney Gallagher rendered ineffective assistance, and he is therefore entitled to a new trial under *Commonwealth v. Brooks,* 576 Pa. 332, 839 A.2d 245 (2003) and *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Appellant's Brief at 15. "It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Koehler, supra, citing Strickland v. Washington,* 466 U.S. 668, 687–691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In adopting *Strickland,* our Supreme Court articulated a three-part test to determine whether an appellant has received ineffective assistance of counsel. "Appellant must demonstrate that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) Appellant was prejudiced by counsel's act or omission." *Koehler, supra citing Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973, 975 (1987).

 Appellant alleges multiple errors by both Attorney Gallagher and appellate counsel. Appellant first avers that Attorney Gallagher was ineffective by only meeting with him on the night before his trial began. Appellant's Brief at 16. Appellant claims he should therefore be entitled to relief pursuant to our Supreme Court's decision in *Brooks.* Appellant's Brief at 16.

In *Brooks,* the appellant was convicted of first-degree murder and sentenced to death following a trial where he elected to proceed *pro se. Brooks, supra* at 247. At the beginning of jury selection, the appellant informed the trial court that he wished to represent himself because his attorney had not met with him at any time up to that point. *Id.* at 247 n. 3. His attorney testified that he could only recall one telephone conversation with his client prior to trial, and that lasted no more than half an hour. *Id.* at 249. His attorney also testified that he did not meet with Brooks while he was in prison because he was not "looking forward to spending any time alone with Mr. Brooks." *Id.* In finding that Brooks' attorney had no reasonable basis for not meeting with his client, the Court concluded the following.

> General fear of a potential conflict in the lawyer-client relationship and a busy schedule simply cannot serve as a reasonable basis for failing to have personal contact with a client prior to that client's trial on capital charges. To the contrary, failure to do so is 'simply an abdication' of the most basic expectations of defense counsel in a capital case.

*Id.* at 250. The Court held that "the very nature of a capital case … clearly necessitates at least one in-person meeting between a lawyer and his client before trial begins." *Id.* at 249. Moreover, our Supreme Court noted "no lawyer, no matter how talented and efficient, can possibly forge a meaningful relationship with his client and obtain adequate information to defend that client against first-degree murder charges in a single thirty-minute telephone conversation." *Id.*

Appellant avers that because Attorney Gallagher failed to meet with him face-to-face until the eve of his trial, he is entitled to relief under *Brooks.* We disagree. Our Supreme Court emphasized in *Brooks* that Brooks' attorney failed to meet with his client "at all." *Id.* at 248. In this case, Attorney Gallagher represented Appellant

at his preliminary hearing and criminal arraignment, conducted a face-to-face meeting at his preliminary hearing, conducted another face-to-face meeting at the prison with Appellant prior to trial, and performed at least one telephone consultation. PCRA Court Opinion, 7/7/10, at 11–12, *citing N.T.*, 3/6/06, at 48–49; N.T., 3/6/06, at 73–74. While we acknowledge that more contact may have been advisable, we disagree with Appellant that the length and frequency of the consultations alone can support a finding of ineffectiveness. We further decline to read *Brooks* so rigidly that we are precluded from evaluating the substantive impact of the consultations Attorney Gallagher did perform. As the PCRA Court noted, Attorney Gallagher's contact with Appellant allowed him to present a cogent trial strategy.

> As limited as [Attorney] Gallagher may have arguably been with his pre-trial preparation, . . . he called five witnesses, put on a vigorous defense, and was able to spare [Appellant] the death penalty[.]

> . . .

> ■ The record in this case establishes unequivocally that [Attorney Gallagher] retained an investigator who testified at the evidentiary hearings that he had interviewed numerous witnesses prior to trial[,] presumably at [Attorney] Gallagher's request[,] and that five of those witnesses end[ed] up testifying at trial for the defense. Even the alleged alibi witness, Ronald Crawford, who did not appear to testify at trial, was the subject of extensive efforts on the part of the investigator to secure him as a defense witness. In addition, the record clearly establishes that [Attorney Galla-

gher] subjected all of the Commonwealth ['s] witnesses to meaningful and effective scrutiny and cross-examination.

PCRA Court Opinion, 7/7/10, at 13–14. Appellant appears to concede that Attorney Gallagher did all of the above-mentioned things, but nevertheless insists that he is entitled to relief because he did not conduct a **substantive** meeting before trial. Appellant's Brief at 16. In our view, it is hard to fathom how, despite the time limitations of Attorney Gallagher's meetings, these meetings were not substantive. As mentioned above, Attorney Gallagher managed to secure five witnesses for Appellant's trial. In addition, Attorney Gallagher hired a private investigator in an effort to track down Appellant's alibi witness, Ronald Crawford.[6] The only way Attorney Gallagher and the private investigator could have known to look for these witnesses was by information obtained from Appellant. Based on the record in this case, we find that "at least one in-person meeting" did occur between Attorney Gallagher and Appellant before trial. *See Brooks, supra* at 249. We also conclude, based on the work Attorney Gallagher performed, that he did "obtain adequate information to defend [Appellant] against first-degree murder charges[.]" *Id.* We therefore conclude that Appellant is not entitled to relief under *Brooks*.

Alternatively, Appellant argues that he is entitled to relief under the United States Supreme Court's decision in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), which was decided the same day as *Strickland.* In *Cronic*, the Court reiterated that in the vast majority of ineffective assistance cases, an appellant must allege "some ef-

---

**6.** We note that the private investigator testified that he was unable to locate Crawford so that he could testify at the trial. An attorney is not ineffective for failing to put on a wit-

ness who was unavailable or unwilling to testify. *Commonwealth v. Johnson*, 27 A.3d 244, 247 (Pa.Super.2011) (citation omitted).

fect of [the] challenged conduct on the reliability of the trial process[.]" *Cronic, supra* at 658, 104 S.Ct. 2039. However, the Court identified three situations where both ineffective assistance and prejudice are presumed and automatically warrant relief because they "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* The first is a "complete denial of counsel." *Id.* at 659, 104 S.Ct. 2039. The second is when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* The third is when there is a breakdown in the system to the point that "the likelihood that counsel could have performed as an effective adversary was so remote as to have made the trial inherently unfair." *Id.* at 660–661, 104 S.Ct. 2039. Our Supreme Court "has employed a *Cronic*-style presumption of prejudice where counsel's constitutional error has caused a total failure in the relevant proceeding.... *Cronic* is limited to situations where counsel's failure is complete, i.e., where counsel has entirely failed to function as the client's advocate." *Commonwealth v. Martin,* 607 Pa. 165, 5 A.3d 177, 191 (2010) (citation omitted), *cert. denied, Martin v. Pennsylvania,* —— U.S. ——, 131 S.Ct. 2960, 180 L.Ed.2d 250 (2011).

Turning to the case *sub judice,* we cannot conclude that there was a "complete denial of counsel." As noted above, Attorney Gallagher met face-to-face with Appellant at his preliminary hearing, again at the prison before trial and performed at least one telephone consultation. PCRA Court Opinion, 7/7/10, at 11–12, *citing* N.T., 3/6/06, at 48–49; N.T., 3/6/06, at 73–74. Also, as the PCRA court noted, Attorney Gallagher "called five witnesses, put on a vigorous defense, and was able to

spare [Appellant] the death penalty[.]" PCRA Court Opinion, 7/7/10, at 13.

We also do not find that Attorney Gallagher failed to subject the Commonwealth's case to "meaningful adversarial testing." In addition to the witnesses Attorney Gallagher called, he made substantial efforts to locate additional witnesses for the defense. Private investigator Ronald McInerney (Investigator McInerney) testified that Attorney Gallagher provided him with a list of twenty names of potential defense witnesses, including Appellant's alleged alibi witness, Ronald Crawford. N.T., 2/3/88, at 778. However, Investigator McInerney was unable to locate Crawford to serve him with a subpoena to appear at trial. *Id.* at 779. The record also unequivocally indicates that Attorney Gallagher subjected the Commonwealth's witnesses to cross-examination. N.T., 1/27/88, at 108–172; 1/28/88, at 217–279, 300–307, 321–326, 328; 1/29/88, at 395–408, 412–415, 424–429, 431, 456–459, 471–503; 2/1/88, at 573–582, 586–587; 2/2/88, at 600. Under this record, we cannot say that Attorney Gallagher failed to subject the Commonwealth's case to meaningful scrutiny and cross-examination.

Finally, Appellant has not alleged any additional factors giving rise to a breakdown in the system, which would "justify a presumption of ineffectiveness." *Cronic, supra* at 662, 104 S.Ct. 2039. Since we have already concluded that Appellant's argument for relief under *Brooks* fails, Appellant's claim that Attorney Gallagher's limited contact caused a breakdown in the system that "made the trial inherently unfair" must also fail. *Id.* at 661, 104 S.Ct. 2039. Accordingly, Appellant is not entitled to relief under *Cronic.*[7]

---

7. Appellant also avers that Attorney Smarro was ineffective for not raising these two

claims on direct appeal. Since we conclude that Appellant claims under *Brooks* or *Cronic*

■ Prior to addressing Appellant's remaining claims, we must first determine whether Appellant has complied with Pennsylvania Rule of Appellate Procedure 1925(b). Rule 1925(b) by its own terms requires that statements "identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa. R.A.P.1925(b)(4)(ii). The Rule also requires that "[e]ach error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court...." *Id.* at (b)(4)(v). Finally, any issues not raised in accordance with Rule 1925(b)(4) will be deemed waived. *Id.* at (b)(4)(vii). Our Supreme Court has recently held that Rule 1925(b) is a bright-line rule.

> Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; any issues not raised in a Rule 1925(b) statement will be deemed waived; the courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions are not subject to *ad hoc* exceptions or selective enforcement; appellants and their counsel are responsible for complying with the Rule's requirements; Rule 1925 violations may be raised by the appellate court *sua sponte*, and the Rule applies notwithstanding an appellee's request not to enforce it; and, if Rule 1925 is not clear as to what is required of an appellant, on-the-record actions taken by the appellant aimed at compliance may satisfy the Rule. We yet again repeat the principle first stated in [*Commonwealth v.*] *Lord* [553 Pa. 415, 719 A.2d

306 (1998)] that must be applied here: "[I]n order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925. Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived." [*Id.*] at 309.

*Commonwealth v. Hill,* 609 Pa. 410, 16 A.3d 484, 494 (2011) (footnote omitted).

Herein, Appellant's Rule 1925(b) statement in this appeal states that "[t]he trial court erred in failing to find that [Appellant] is entitled to relief under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)[ ](requiring proof of prejudice)." However, Appellant's Rule 1925(b) statement nowhere specifies what the deficiencies are for the purposes of this appeal. The Commonwealth argues that for this reason, this Court should deem the rest of Appellant's issues waived. Commonwealth's Brief at 32–33. *See also Commonwealth v. Hansley,* 24 A.3d 410, 415 (Pa.Super.2011) (stating "the Rule 1925(b) statement must be 'specific enough for the trial court to identify and address the issue [an appellant] wishe[s] to raise on appeal[ ]'") (citation omitted), *appeal denied,* —— Pa. ——, 32 A.3d 1275 (2011); *Commonwealth v. Reeves,* 907 A.2d 1, 2 (Pa.Super.2006) (stating "[w]hen a court has to guess what issues an appellant is appealing, that is not enough for meaningful review[ ]"), *appeal denied,* 591 Pa. 712, 919 A.2d 956 (2007).

Appellant counters that Rule 1925(b) "does not require the level of specificity the Commonwealth suggests." Appellant's Brief at 34 n. 17. However, it is telling that

lack merit, we similarly hold that Attorney Smarro was not ineffective for not raising them on appeal. *See Commonwealth v. Lawrence,* 960 A.2d 473, 478 (Pa.Super.2008)

(stating "[i]t is well established that appellate counsel cannot be deemed ineffective for failing to raise a meritless claim[ ]"), *appeal denied,* 602 Pa. 663, 980 A.2d 606 (2009).

in its Rule 1925(a) opinion, the PCRA court stated that "[d]espite the seemingly numerous arguments that [Appellant] poses in this appeal, it is essentially one issue that is articulated in a number of variations." PCRA Court Opinion, 7/7/10, at 7. The PCRA court surmised from Appellant's vague Rule 1925(b) statement that Appellant was only raising the consultation issue. *Id.* Appellant further argues that "Appellant proffered and was at all times prepared to prove actual prejudice, and pled several examples of how counsel's failure to consult prejudiced him beyond that required under *Brooks.*" *Id.* While this may be true, our Supreme Court has adopted a bright-line rule that a failure to specify those examples in a Rule 1925(b) statement results in waiver. *Hill, supra.* We are powerless to grant Appellant an *ad hoc* exception in this case. *Id.* Accordingly, we agree with the Commonwealth that Appellant has waived his additional issues due to his failure to specify them in his Rule 1925(b) statement.

Since we conclude that all of Appellant's issues are either waived or devoid of merit, we affirm the PCRA court's July 15, 2009 order denying relief.

Order affirmed.

Judge WECHT files a concurring opinion.

Judge BOWES concurs in the result of the majority and joins Judge WECHT's concurring opinion.

## CONCURRING OPINION BY WECHT, J.

Kevin Johnson ("Appellant") went on trial for murder in the first degree. If convicted, he faced the death penalty.[1] The stakes can be no higher. The punishment can be no more severe.

A lawyer was duly appointed to represent Appellant. Yet, in preparing to defend Appellant and his life in this capital case, that lawyer visited Appellant in jail exactly once. What is more, that brief and solitary visit did not occur until the very night before jury selection commenced.

Appellant and trial counsel did have two other interactions. They met briefly prior to Appellant's preliminary hearing, and briefly at Appellant's formal arraignment. No trial preparation occurred at either of these proceedings.

The learned majority today rejects Appellant's claim that these minimal contacts constituted ineffective assistance of counsel. The majority does so by finding that, while sparse, the contacts between Appellant and counsel were nonetheless "substantive." M.O. at 244. A fair review of the record in this case reveals that the attorney-client interactions were anything but substantive. Indeed, they were cursory and shallow. I discuss this below.

Nonetheless, for reasons that I set forth further below, I do not believe that Appellant ultimately can demonstrate prejudice arising from these regrettable circumstances. Therefore, although I cannot subscribe to the majority's reasoning, I do concur in its result.[2]

---

1. Appellant was convicted. However, as the majority points out, the trial court ultimately ruled that the Commonwealth could not establish its proposed aggravating circumstance, to wit, that Appellant's actions endangered another person. Majority Opinion ("M.O."), at 239. Accordingly, the trial court directed the jury, which was set to determine Appellant's fate, to recommend a life sentence. Notes of Testimony ("N.T."), 2/5/1988, at 941–42. That sentence was imposed on July 1, 1988.

2. Appellant raises or attempts to raise several additional issues before this Court. *See* M.O. at 240–42 (citing Appellant's brief at 4). With the exception of the points raised in this concurring opinion, I join the majority's resolu-

To be entitled to relief on an ineffective assistance of counsel claim, a PCRA[3] petitioner must plead and prove facts establishing that: (1) the underlying claim has arguable merit; (2) counsel's actions or omissions lacked a reasonable basis; and (3) counsel's actions resulted in prejudice. *Commonwealth v. Cox*, 603 Pa. 223, 983 A.2d 666, 678 (2009); *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987). In the PCRA context, prejudice means that, absent counsel's actions or omissions, there is a reasonable probability that the outcome of the proceedings would have been different. *Cox*, 983 A.2d at 678. Counsel is presumed to be effective; the burden lies upon the petitioner to demonstrate otherwise. *Id.*

Appellant's primary claim is that Attorney Gallagher was ineffective because

tion of those claims, including its rejection of Appellant's claim that he is entitled to relief under *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

Furthermore, I agree with the majority that the remaining claims raised by Appellant in his brief are waived. In his 1925(b) Statement, Appellant makes the following allegations: "(a) the trial court erred and abused its discretion in dismissing the PCRA petition; (b) the trial court erred and abused its discretion in denying petitioner PCRA relief; (c) the trial court erred and abused its discretion in failing to order a new trial; (d) the trial court erred and abused its discretion when it failed to state its reasons on the record for the denial of PCRA relief; (e) the trial court erred and abused its discretion in denying PCRA relief when the evidence clearly showed that trial counsel utterly failed to visit, consult, confer, communicate or otherwise fulfill his responsibility to consult with Mr. Johnson in advance of trial; (f) the trial court erred and abused its discretion when it failed to follow the clear directives of the Superior Court that petitioner should receive relief if he established the lack of communication between himself and trial counsel; (g) the trial court erred and abused its discretion when it failed to conduct further evidentiary hearings on the remaining issues raised in the PCRA petition despite the express reservation of the parties; (h) the trial court erred in failing to find that the complete abdication of counsel's responsibilities to consult with his client pretrial constitutes ineffective assistance of counsel; (i) the trial court erred in failing to find that petitioner is entitled to relief under *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (where prejudice is presumed); (j) the trial court erred in failing to find that petitioner is entitled to relief under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (requiring proof of prejudice); (k) the trial court

erred in failing to find that petitioner is entitled to relief under *Commonwealth v. Brooks*, 576 Pa. 332, 839 A.2d 245, 248 (2003); (l) the trial court erred in failing to order a new trial. Petitioner meets the two-prong standard of the Sixth Amendment: his counsel provided deficient, unreasonable representation in a critical area of the pretrial preparation and consultation, and confidence in the outcome is undermined as a result, establishing prejudice. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); (m) the trial court erred in failing to find that petitioner meets Pennsylvania's three part test for claims of ineffective assistance. In *Commonwealth v. Moore*, 569 Pa. 508, 805 A.2d 1212 (2002), the Pennsylvania Supreme Court held that in order to establish a claim of ineffective assistance of counsel under the PCRA, an appellant must show that: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." 1925(b) Statement, 9/9/2009, at 4–6 *(verbatim* except for minor grammatical edits for clarity).

I agree with the majority that, with the exception of the claims that trial counsel was ineffective for failing to consult with Appellant prior to trial and that he is entitled to relief under *Cronic*, Appellant's 1925(b) statement failed to include the claims that he has now raised in his brief. *See* Brief for Appellant at 4–5. Therefore, those issues must be deemed waived. Like the majority, I accordingly offer no opinion as to the merits of the waived claims discussed in Appellant's brief.

3. Post–Conviction Relief Act, 42 Pa.C.S. §§ 9541–46.

(apart from brief encounters at the preliminary hearing and the formal arraignment) he met with Appellant only once, that sole consultation being a fifteen to twenty minute prison visit on the night before jury selection was to begin in Appellant's capital murder trial. This claim of ineffectiveness is governed by the Pennsylvania Supreme Court's decision in *Commonwealth v. Brooks*, 576 Pa. 332, 839 A.2d 245 (2003).[4] In *Brooks*, a death penalty case, the defendant represented himself, choosing to do so because his attorney had not met with him once before trial. *Id.* at 247 & n. 3. Counsel there admitted that he did not meet with the defendant in the jail prior to trial, confessing that he was not "looking forward to spending any time alone with Mr. Brooks." *Id.* at 249. Counsel recalled conducting only one thirty-minute telephone conversation with the defendant. *Id.*

In reversing the defendant's conviction and finding trial counsel ineffective for his trifling efforts, our Supreme Court held:

> It should go without saying that no lawyer, no matter how talented and efficient, can possibly forge a meaningful relationship with his client and obtain adequate information to defend that client against first-degree murder charges in a single thirty-minute telephone conversation. Although a lawyer can always learn certain information from his client over the telephone, we simply would be discounting the gravity of a death penalty case were we to say that a lawyer representing a defendant in such a case has done his job effectively when he has spent only limited time on the telephone with his client. Indeed, the very nature of a capital case, typically quite involved and always subjecting the defendant to the possibility of death, clearly necessitates **at least one in-person meeting** between a lawyer and his client before trial begins. Without such a meeting, there is little to no hope that the client will develop a defense plan. Moreover, only a face-to-face meeting allows an attorney to assess the client's demeanor, credibility, and the overall impression he might have on a jury. This is of particular importance in cases in which the client may take the stand in his defense or at the penalty phase in an attempt to establish the existence of particular mitigating circumstances.

*Id.* (emphasis added). The Court went on to rule that trial counsel lacked a reasonable basis for his failure to meet the defendant in-person, and that the appellant suffered prejudice as a result. *Id.* at 249–50.

I do not read *Brooks* to create a bright-line rule that allows lawyers to avoid being found ineffective in capital cases so long as they simply and perfunctorily consult once with the client in person. *Brooks* made expressly clear that in-person visits with a client, particularly in capital cases, are essential to allowing a lawyer to "forge a meaningful relationship with his client" and to providing for constitutionally adequate representation. *Id.* As the above-emphasized language highlights, the Supreme Court held that counsel must make "at least" one visit. Undoubtedly, coun-

---

4. In *Brooks,* our Supreme Court only addressed trial counsel's duty in a capital case to conduct at least one in-person jail visit with an incarcerated defendant. The Court did not discuss the obligations of trial counsel where the defendant is not in jail, or when the charged crime is not first-degree murder with the possibility of a death sentence. In a concurring opinion, Justice Eakin opined that the principle should not be limited to capital cases. *Brooks*, 839 A.2d at 248 (Eakin, J., concurring). Because Appellant herein was incarcerated and facing a capital trial, *Brooks* is squarely on point. Thus, I do not offer any view as to whether *Brooks* should be extended to other situations.

sel's efforts must be examined in each case individually, considering the unique circumstances of each situation. The number of necessary face-to-face visits will vary depending on the complexity and extensiveness of the issues and evidence involved in each particular case.

*Brooks* sets a constitutional floor. It does not set a ceiling. One meeting is necessary. It may not be sufficient. To hold otherwise, as I believe the majority does in this case, would permit counsel to satisfy his constitutional duty to consult with his client with only a single visit at the jail, and to achieve this regardless of when that meeting occurred, what information was available to the client and counsel at the time, and what was discussed and decided during the meeting. To the contrary, I read *Brooks* not only to impose a duty to meet with a client "at least" once, but also to require that the meeting(s) in fact address the substantive issues outlined in *Brooks* itself, as well as any other issues essential to the zealous representation of the particular client. It hardly should need to be emphasized that this requirement is especially critical in a death penalty case.

In *Brooks*, our Supreme Court posited the face-to-face meeting as an integral and essential aspect of trial preparation. No practitioner would dispute that, often, multiple meetings are necessary fully to flesh out a defense or to formulate a plan to impeach or counter the Commonwealth's evidence. Indeed, quite often, more than one meeting is needed simply to foster that basic trust which is necessary between a defendant, whose life and liberty are on the line, and his attorney. At this late date, there can be little doubt that this trust-building process can be especially challenging and time-consuming across cultural, economic, and racial divides that often lie between a defendant and his lawyer.

In short, to comply with *Brooks*, there must be not only "at least" one face-to-face meeting; that meeting also must be substantive. The *Brooks* Court was not prescribing some perfunctory, clock-punching form for form's sake. Such an empty exercise would mock our Constitution. The meeting cannot be an afterthought or a token visit made only to comply with the bare minimum standard. Unfortunately, the lawyer's eleventh-hour visit in this case was just that. I do not believe that our law approves of drive-by lawyer visits to capital case clients. Hence, on this point, I cannot join the majority, which ultimately concludes that counsel's last minute visit was sufficient to satisfy *Brooks'* mandate.

The majority states that "it is hard to fathom how, despite the time limitations of Attorney Gallagher's meetings, these meetings were not substantive." Majority Opinion ("M.O.") at 244. I take a more skeptical view. The "meetings" upon which the majority relies include Attorney Gallagher's representation of Appellant at the preliminary hearing and arraignment, a brief conversation immediately prior to the preliminary hearing, one alleged phone call, and the above-referenced prison visit that occurred the night before jury selection began. As evidence that these "meetings" were "substantive," the majority points out that trial counsel hired an investigator who attempted to locate Appellant's alibi witness, called multiple witnesses at trial, and effectively cross-examined the Commonwealth's witnesses. *Id.* While these points ultimately may help to establish that Appellant did not suffer prejudice notwithstanding the lawyer's inadequate efforts to meet and consult with Appellant, *see infra,* they do not prove that the lawyer's contacts with Appellant were substantive.

In fact, as I suggest below, these points actually demonstrate the opposite. The witness and alibi information obtained and utilized by Attorney Gallagher was not obtained through any effort by Attorney Gallagher, but rather through Appellant's persistent attempts to contact Attorney Gallagher by way of multiple letters. Notes of Testimony ("N.T."), PCRA hearing, 3/06/2006, at 40, 63–64.

The majority cannot "fathom" how the contacts between Attorney Gallagher and Appellant were non-substantive. Respectfully, I can. Upon closer inspection, it becomes quite apparent that precisely none of the "meetings" referenced by the majority were substantive. The first contact between Attorney Gallagher and Appellant occurred at the preliminary hearing, prior to which Appellant and counsel had no communication whatsoever. Attorney Gallagher merely showed up on the date of the hearing and introduced himself to Appellant five minutes before the hearing began. N.T. at 39. Appellant had no opportunity to discuss the case with Attorney Gallagher before the hearing commenced. Appellant tried to tell Attorney Gallagher that he did not commit the crime. Appellant also attempted to give Attorney Gallagher names of witnesses that Appellant believed would exonerate him. However, Attorney Gallagher declined to have a substantive conversation with Appellant, instead telling Appellant to send him any case-related information through the mail. N.T. at 65. It is patently clear that nothing "substantive" for *Brooks* purposes occurred at this preliminary hearing.

The next "meeting" occurred at the formal arraignment, where Appellant entered a plea of not guilty. N.T. at 39. Between the preliminary hearing and the formal arraignment, Attorney Gallagher did not visit Appellant in jail. He did not respond to any of Appellant's letters. This latter failure, of course, occurred notwithstanding Attorney Gallagher's own instruction to Appellant to mail him information. Moreover, there is no evidence whatsoever in the record indicating that any substantive trial preparation discussions occurred at the formal arraignment that would justify characterizing this encounter as a substantive meeting for *Brooks* purposes.

The majority claims that Attorney Gallagher "performed at least one telephone consultation." M.O. at 244. There is no evidence in the record that this telephone consultation ever occurred. To the contrary, Appellant repeatedly testified that he never spoke to Attorney Gallagher by telephone:

Q: Did you call Mr. Gallagher?

A: I may have called him once or twice; but I wrote him letters.

Q: Did you ever speak to Mr. Gallagher when you called the office?

A: No sir.

N.T. at 40.

To its credit, the PCRA court wanted to be clear on this particular point:

THE COURT: Maybe I missed this. Did you at any time speak to him on the telephone, or any other way?

THE DEFENDANT: No, sir.

N.T. at 41.

The following exchange occurred when questioning by PCRA counsel resumed:

Q: Did you have any phone calls with Mr. Gallagher prior to the night before trial?

A: I may have called him once or twice; and I don't believe that I ever had a chance to speak with him. I don't think I spoke with him ever, once.

N.T. at 47. Thus, despite the majority's finding to the contrary, *see* M.O. at 243–44,

the record does not support a finding that any telephone conversation occurred between Attorney Gallagher and Appellant, let alone a substantive one.

Perfunctory encounters at pre-trial hearings and arraignments and phantom telephone conversations cannot and do not stand in for substantive face-to-face consultations, in jail or in any other place. They cannot replace the substantive in-person visits that *Brooks* requires. There is danger in a wooden validation of pro forma encounters as satisfying *Brooks*. If *Brooks* means anything, it surely must mean that personal consultation between a capital defendant and his lawyer has to amount to something more than a meaningless formality. And yet, that is all that happened here.

The majority implicitly elasticizes *Brooks* so as to allow limited, indirect contacts to satisfy that case's substantive requirements, particularly the requirement for an in-person consultation. Indeed, the majority concludes that, "based on the work Attorney Gallagher performed," he did "obtain adequate information to defend [Appellant] against first-degree murder charges[.]" M.O. at 244 (modifications in original). However, the *Brooks* Court required unequivocally that the threshold be met in advance, at least in part, by a substantive, face-to-face meeting. Today's majority reasons backward from trial to find that the contacts between Attorney Gallagher and Appellant were substantive and *Brooks*-compliant, because Attorney Gallagher was able to locate and call five witnesses at trial, to identify and attempt to locate Appellant's alibi witness, and to effectively test the Commonwealth's case.

These witness efforts were enabled solely by the information provided in Appellant's unanswered letters, as well as the discovery materials in the case. There is no evidence of record to show that these efforts were informed by any substantive, in-person contact between Appellant and Attorney Gallagher. That they occurred at all without such a meeting does not demonstrate their constitutional adequacy. Rather, what they do instead is raise questions as to how much more might have been done on Appellant's behalf had counsel satisfied *Brooks'* consultation requirement.

Common sense dictates that these matters undeniably were investigated and prepared long before Attorney Gallagher's last-minute visit with Appellant. Appellant testified that the visit only lasted fifteen to twenty minutes. Jury selection commenced the next day. This encounter could not have been a substantive discussion regarding preparation for the upcoming trial. At best, the meeting might have amounted to some crash course in how the trial, with Appellant's very life hanging in the balance, would proceed. Appellant testified that Attorney Gallagher entered the prison meeting room and said, "The Commonwealth wants to try your case tomorrow. . . . They're going to put on three witnesses to say that you were over at this house during the time of the shooting. We're going to put on our witnesses to say that you were elsewhere, selling clothing. The jury is going to deliberate; and hopefully, they'll say you're not guilty." N.T. at 49. This discussion may have been reasonable if it were held by way of introduction months prior to trial. However, it occurred on the night before trial was to begin. That is a breathtaking measure of casualness in any criminal case, let alone a capital one.

*Brooks'* core premise is that at least one in-person meeting is necessary effectively to represent a defendant facing a first-degree murder trial. The meeting is not optional; nor (important here) is it a mere formality. The meeting is essential

to resolve the many issues implicated in preparing for a murder trial. By way of illustration and example, murder trials often involve the following, non-exhaustive list of issues: (1) impeaching the credibility of fact witnesses; (2) utilizing and/or challenging the validity of forensic or ballistics evidence; (3) investigating and challenging the quality of the police investigation; (4) filing and litigating pre-trial motions; (5) examining discovery materials for information that is exculpatory or can be used in impeachment; (6) observing and assessing the credibility of the defendant himself; (7) discussing the benefits and perils of the defendant testifying in his own defense; (8) formulating proposed jury instructions calibrated to the particular evidence and issues involved in the case; (9) discussing whether to opt for a bench or jury trial, and the strategy to be employed to obtain a fair and impartial jury; and (10), in capital cases, discussing combatting potential aggravating circumstances and uncovering and presenting mitigation evidence. In addition to resolving these issues, a defendant should understand the potential sentences he faces, the procedure and course of a trial, and any potential plea bargains or available avenues to pursue a plea bargain. There can be no serious suggestion that today's majority genuinely believes that these consultations occurred here on the eve of trial.

Any substantive discussion between an attorney and client, particularly in a death penalty setting, should include most, if not all, of the above-listed points. Moreover, it is beyond cavil that the discussion should be held when time remains for trial counsel to steer his representation of the client based upon the information and preferences gleaned during the meeting. In other words, a *Brooks* meeting cannot be so near to trial that counsel cannot act upon any information received from the defen-

dant. Otherwise, the "meeting" is a mere formality; indeed, it is a mockery, a nullity. I do not for a moment believe that this is what our Supreme Court intended or expressed in *Brooks*.

In this case, Attorney Gallagher's eleventh-hour meeting was not only untimely; it also was non-substantive. Because the meeting was so late in the trial preparation process, Attorney Gallagher could not have discussed any of the above-listed factors in any detail. Indeed, Appellant testified that Attorney Gallagher did not review the discovery materials with him, did not discuss Appellant's right to testify or whether it was beneficial to testify, and did not discuss any other material aspect of his defense. N.T. at 50.

I would find that Appellant's claim satisfies the arguable merit prong of the ineffectiveness test. Sadly, our ability to consider whether trial counsel had a reasonable basis for not visiting Appellant until the night before trial, for failing to return any of Appellant's phone calls and letters, and for failing to involve Appellant in any other significant way in his own defense is constrained by the fact that counsel has since died. Nonetheless, I would find that Appellant also has satisfied this prong of the ineffectiveness test. I can conceive of no reasonable explanation for neglecting to meet with a capital defendant until the night before trial, at which point it would in any event be too late to act upon any of the defendant's input. I fear that the learned majority today sends a message to the criminal bar that is muddled and counterproductive.

However, I ultimately must conclude that Appellant cannot demonstrate that he was prejudiced by Attorney Gallagher's rampant derelictions. As the majority observes, despite his dubious methods and paltry efforts at communication, Attorney

**254**

Gallagher secured the testimony of five defense witnesses; identified and attempted to locate an additional alibi witness; effectively cross-examined the Commonwealth's witnesses; and even successfully argued to the trial court that the Commonwealth could not establish a factual and/or legal basis to support an aggravating circumstance for imposition of a death sentence. Apparently, Attorney Gallagher excelled on the fly. His methods are not worthy of emulation. But they sufficed to defeat Appellant's prejudice claim here.

Appellant cannot demonstrate that, had Attorney Gallagher met with him earlier in the process and discussed more substantive issues, there was a reasonable *probability* that the result of the trial would have differed. *Cox, supra.* The evidence against Appellant was overwhelming.

On October 8, 1986, Appellant and his accomplice went to a residence in southwest Philadelphia seeking drug-dealer Lyndon "Cowboy" Morris ("Morris"). When they arrived, James Smith was in a second-floor bedroom with Opal Nickson, Angelo Smith, and Elijah Bennett, smoking marijuana and cocaine. James Smith went downstairs to answer Appellant's knock on the door. When Smith got there, Appellant brandished a revolver while his accomplice produced a sawed-off shotgun. Appellant demanded to see Morris. Smith took them to the second floor, where they encountered the other men. At gunpoint, Appellant demanded that these men lie on floor.

Appellant knocked on Morris' door. Morris opened the door, but immediately tried to shut it upon observing the shotgun. The accomplice fired a shot through the door, which hit Morris in the abdomen. Appellant rushed into the room and fired his revolver at Morris multiple times, hitting Morris in the chest while he was on the ground. Appellant and his accomplice took Morris' money and narcotics and fled.

At trial, Nickson, Bennett, James Smith, and Angelo Smith unequivocally identified Appellant as one of the perpetrators of Morris' murder. Despite his inexplicable failure to consult with Appellant, Attorney Gallagher did call five witnesses on Appellant's behalf. These included alibi witnesses who testified that Appellant was selling clothes at the time of the murder and fact witnesses who contradicted the Commonwealth's witnesses' description of what Appellant was wearing and the vehicle in which he was riding. The jury chose to reject these witnesses, presumably based upon the Commonwealth's overwhelming identification evidence. This choice was within the decisional discretion of the jury. We are not free to intrude upon that discretion. *See Commonwealth v. Cooper,* 596 Pa. 119, 941 A.2d 655, 662 (2007) (appellate court may not substitute its own judgment for the jury's, "as it is the fact finder's province to weigh the evidence, determine the credibility of witnesses, and believe all, part, or none of the evidence submitted").

I, too, believe that the Commonwealth's evidence was overwhelming. Based upon my review of the record, Appellant has not proffered any evidence sufficient to demonstrate that any additional actions by Attorney Gallagher probably would have resulted in a different verdict, particularly in light of the Commonwealth's substantial identification evidence.

Thus, I am constrained to concur in the result reached by the majority, despite my belief that Attorney Gallagher's representation fell well short of what our law requires.