J-S33012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| GAYLORD (NMN) SPELL | |
| Appellant | No. 1011 WDA 2015 |

Appeal from the PCRA Order May 26, 2015
in the Court of Common Pleas of Lawrence County Criminal Division
at No(s): CP-37-CR-0000603-2007

BEFORE: GANTMAN, P.J., OLSON, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:        **FILED OCTOBER 12, 2016**

Appellant, Gaylord (NMN) Spell, appeals from the order of the Lawrence County Court of Common Pleas denying his first Post Conviction Relief Act[1] ("PCRA") petition following evidentiary hearings. Appellant claims the PCRA court erred in denying relief on his numerous claims of ineffective assistance of counsel. We affirm.

The Pennsylvania Supreme Court summarized the facts underlying Appellant's convictions in his direct appeal from the imposition of the death sentence.

> In the early morning hours of March 1, 2007, a custodian at the Lawrence County Career and Technical Center noticed a van traveling slowly through the school's parking lot. Later that morning, a teacher at the Center found a nude body lying sideways in the parking lot, and

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

called the police. Investigators soon identified the victim and determined she was last seen alive on the evening of February 27. Around 3:00 p.m. on March 1, a PennDOT road crew alerted State Police after discovering clothing strewn along a roadway in Butler County. State Police recovered a bra, blue jeans, a sock, a flannel long-sleeve shirt, thermal bottoms, a black slipper, a sock covered in blood, a sweatshirt covered in blood, a blood-soaked pillow, a bloodstained cover for the arm of a couch, and a blood-covered tablecloth.

Dr. James Smith, a board certified forensic pathologist, performed an autopsy on the victim's body, which revealed ten lacerations on her head and face, including two on both her left and right temple, three on the back of her head, and three on her scalp. The victim suffered a fracture at the base of her skull, a laceration of her brain, and a fracture on the back of her skull. She also had two broken ribs and bruising on her head, face, lower back, and legs. Dr. Smith determined the cause of death was blunt force trauma to the head. Because the lacerations looked identical, he opined she had been repeatedly struck with the same round object.

State Police found material under the victim's fingernails and seminal fluid on her body, which allowed them to produce a DNA profile. The profile was entered into the Combined DNA Index System, a nationwide database which includes DNA profiles of convicted felons; a database in Virginia matched the DNA profile to [A]ppellant. DNA testing further revealed the blood on the thermal bottoms and black slipper was the victim's, while blood from the tablecloth matched both the victim and [A]ppellant.

Appellant was interviewed by State Police; he denied meeting the victim or ever having her in his residence. State Police executed a search warrant of [A]ppellant's residence, and discovered a couch matching the arm cover recovered on the road. A sequin was found that matched the bra discovered along the roadway. Bloodstains were found on [A]ppellant's mattress and the floor between his bed and nightstand. State Police also executed a search

warrant for [A]ppellant's van, and found the victim's blood on the driver-side door window.

Investigation revealed [A]ppellant was scheduled to work February 28, but called his employer to excuse himself; he returned to work March 1, at 2:47 p.m. The clothing, found around 3 p.m. that day, was on a route [A]ppellant could have used to get to his workplace.

Appellant was charged with criminal homicide and abuse of a corpse [on April 24, 2007, and the Commonwealth filed a notice of aggravating circumstances seeking the death penalty].

*Commonwealth v. Spell*, 28 A.3d 1274, 1277-78 (Pa. 2011).

Appellant was represented by the Public Defender's Office. His trial counsel, Harry O. Falls, Esq. ("trial counsel"), was the Chief Defender at that time and appeared on his behalf at Appellant's preliminary hearing with co-counsel, Dennis Elisco, Esq. Trial counsel thereafter resigned as Chief Defender in February 2008. N.T. PCRA Hr'g I, 4/30/14, at 34. He took a disability leave from March to August 2008, during which he also sought inpatient mental health treatment from May 31st to June 9th. *Id.* at 27, 36. He returned to the Public Defender's Office as a part-time Assistant Defender in August 2008. *Id.* at 37.

After his return, trial counsel continued to represent Appellant along with co-counsel. At that time, trial counsel's caseload included two other homicide cases: one, which resulted in a plea, and the other, which proceeded to trial. N.T. PCRA Hr'g I at 18. Trial counsel's protocol was to consider each case serially, not simultaneously, and avoid discussing a case

with the defendant until he reviewed discovery. Trial counsel did not review discovery in Appellant's case until early 2009. In February 2009, trial counsel filed a motion for a competency evaluation. According to a prison log-in sheet, trial counsel met with Appellant on March 25, 2009, for twenty-five minutes, on March 26, 2009, for fifty minutes, and on April 8, 2009, for an unknown period of time.

Appellant appeared before the trial court on April 13, 2009, for jury selection. Appellant requested new counsel, which the trial court denied. N.T. *Voir Dire* I, 4/13/09, at 3-16. During the litigation of Appellant's request for new counsel, trial counsel indicated that "the closer we've gotten to trial, the less cooperative he's become." *Id.* at 9. Jury selection commenced that same day.

On April 20, 2009, trial counsel described Appellant as "now being one hundred percent uncooperative." N.T. *Voir Dire* VI, 4/20/09, at 18. Trial counsel informed the trial court that Appellant intended to testify, but refused to disclose the substance of his proposed testimony. *Id.* at 17. Trial counsel asserted that Appellant authored a note addressed to the Commonwealth, which Appellant gave to trial counsel. In the note, Appellant indicated that he intended "to testify at trial that the killing in this matter was committed by Crystal Black[,"] his girlfriend. *Id.* at 23. Appellant accused trial counsel of disclosing the contents of the note and his trial strategy. *Id.* Appellant again requested new counsel, which the trial

court denied. *Id.* at 28. Jury selection continued until April 22nd. Meanwhile, the prison logs indicated that trial counsel again met with Appellant on April 21st for thirty minutes.

On April 27, 2009, before opening statements, the District Attorney disclosed that he was making campaign telephone calls and inadvertently spoke with a juror empaneled for Appellant's trial. N.T. Trial I, 4/27/09, at 3. The District Attorney indicated that the juror told him that he "was doing a pretty good job" and she "was impressed" by him when she was in court. *Id.* at 4. The court examined the juror, and the juror stated she remembered the phone call, but did not recall the substance of her conversation with the District Attorney. She did not recall relaying a favorable opinion of the prosecutor and asserted she could remain fair. *Id.* at 10, 13-14. Trial counsel did not object or move to replace the juror. *Id.* at 16. Following a discussion with Appellant, trial counsel indicated that Appellant agreed to have the juror sit for trial. *Id.* at 16. The court ruled that the juror could continue to serve. *Id.* That same day, the Commonwealth and Appellant gave opening statements and the Commonwealth began presenting its evidence.

As indicated above, the trial evidence against Appellant was largely circumstantial, but supported by DNA evidence suggesting that Appellant had physical contact with the victim, disposed of the victim in Lawrence County, and threw some of his and the victim's personal items out of his van

in Butler County while driving to work. The Commonwealth's evidence included the testimony that the victim worked as a prostitute. Appellant, against trial counsel's advice, did not testify and presented no other evidence.

On April 30, 2009, the jury found Appellant guilty of first-degree murder and abuse of a corpse. On May 4th, the jury found an aggravating circumstance, torture, and no mitigating circumstances. On May 15th, the trial court imposed a sentence of death.

Appellant appealed to the Pennsylvania Supreme Court. The Court affirmed the conviction, but found the evidence insufficient to sustain the jury's finding of torture and remanded for resentencing to a life sentence. *Spell*, 28 A.3d at 1284. On December 2, 2011, the trial court resentenced Appellant to life imprisonment.

On August 15, 2012, Appellant mailed the timely *pro se* PCRA petition giving rise to this appeal. The PCRA court appointed present PCRA counsel. PCRA counsel did not amend Appellant's PCRA petition or respond to the numerous *pro se* amendments Appellant filed with the trial court. After requesting several continuances, PCRA counsel represented Appellant at evidentiary hearings on April 30 and August 4, 2014, at which trial counsel testified. Following the submission of a counseled brief by Appellant, the PCRA court denied relief on May 26, 2015.

Appellant filed a timely notice of appeal. On June 29, 2015, the PCRA court entered an order requiring the submission of a Pa.R.A.P. 1925(b) statement. Appellant did not file a required statement. On September 10, 2015, the PCRA court authored an opinion noting the procedural defect, but requesting that its order denying the PCRA petition be affirmed. PCRA Ct. Op., 9/10/15, at 1, 45.

Appellant, in his counseled brief in this appeal, raises the following questions for review:

> Did the [PCRA] court err in finding that Appellant's trial counsel was not ineffective for failure to adequately consult with Appellant and prepare a strategy for trial?
>
> Did the [PCRA] court err in finding that Appellant's trial counsel was not ineffective for failure to contest, through filing of an omnibus pretrial motion, the legality of the multiple searches of [Appellant's] residence and vehicle as well as challenge the execution of the search warrants issued for the searches?
>
> Did the [PCRA] court err in finding that Appellant's trial counsel was not ineffective for failing to hire an expert or specialist to examine and challenge the Commonwealth's physical evidence and expert testimony presented at time of trial?
>
> Did the [PCRA] court err in finding that Appellant's trial counsel was not ineffective for failing to explore an independent exculpatory statement and secure the testimony of witness Russell A. Wardman?
>
> Did the [PCRA] court err in finding that Appellant's trial counsel was not ineffective for failing to make a timely objection to preserve for appeal actual telecommunication between the prosecutor and juror?

Did the [PCRA] court err in finding that Appellant's trial counsel was not ineffective for failure to present and preserve a ***Batson***[2] claim at time of trial?

Did the [PCRA] court err in finding that Appellant's trial counsel was not ineffective for failure to recognize, address and preserve for review a conflict between the Public Defender's Office and [Appellant] as a result of former representation of the victim?

Appellant's Brief at 7-8.[3]

Preliminarily, we must consider Appellant's failure to file a court-ordered Rule 1925(b) statement. As stated by the Pennsylvania Supreme Court:

> [o]ur jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; any issues not raised in a Rule 1925(b) statement will be deemed waived; the courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions are not subject to *ad hoc* exceptions or selective enforcement; appellants and their counsel are responsible for complying with the Rule's requirements; Rule 1925 violations may be raised by the appellate court *sua sponte*, and the Rule applies notwithstanding an appellee's request not to enforce it; and, if Rule 1925 is not clear as to what is required of an appellant, on-the-record actions taken by the appellant aimed at compliance may satisfy the Rule. We yet again repeat the principle first stated in [***Commonwealth v. Lord***, 719 A.2d 306 (Pa. 1998)] that must be applied here: "[I]n order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925. Any

---

[2] ***Batson v. Kentucky***, 476 U.S. 79 (1986).

[3] The Commonwealth has not filed a responsive brief.

issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived."

***Commonwealth v. Hill***, 16 A.3d 484, 494 (Pa. 2011) (citations and footnote omitted); ***accord Commonwealth v. Johnson***, 51 A.3d 237, 246 (Pa. Super. 2012) (*en banc*).

The Pennsylvania Supreme Court, in ***Hill***, addressed waiver under the former version of Rule 1925. ***Hill****,* 16 A.3d at 490 n.11. The Court stated:

> We need not determine whether the circumstances presented would satisfy the terms of amended Rule 1925(c)(3), if the amendment applied. We note, however, that the amendment speaks of remand only in "criminal cases." Technically, the PCRA is civil in nature. ***See Commonwealth v. Haag***, . . . 809 A.2d 271, 284 ([Pa.] 2002) ("The PCRA system is not part of the criminal proceeding itself, but civil in nature.") (citing ***Pennsylvania v. Finley***, 481 U.S. 551, 557 . . . (1987)).

***Id.*** at 495 n.14.

The ***Hill*** Court also addressed a remand procedure under former Rule 1925(b) that adopted "efficiencies in the **direct** appeal context, involving an issue frequently arising in Superior Court, and bottomed in existing remedial caselaw." ***Id.*** at 496 (emphasis added) (discussing the remand procedure adopted in ***Commonwealth v. West***, 883 A.2d 654 (Pa. Super. 2005) and codified in current Rule 1925(c)(3)).

The ***Hill*** Court further noted:

> [I]n the distinct context of a serial PCRA petition, this Court has recognized the potential cognizability of a claim of ineffective assistance of counsel premised upon counsel abandonment. ***See Commonwealth v. Bennett***, 593 Pa. 382, 930 A.2d 1264 (2007) (involving failure to file brief

on PCRA appeal which, under practice since eliminated by Superior Court, resulted in dismissal of appeal; claim deemed sufficient to warrant remand for consideration under exception to PCRA time-bar set forth in 42 Pa.C.S. § 9545(b)(1)(ii) (governing previously unknown facts)).

*Id.* at 497 n.16.

Thus, the **Hill** Court applied the "bright line" rule of waiver based on the former version of Rule 1925. Although it discussed the remand provision of the current version of Rule 1925 and suggested current Rule 1925(c)(3) should not apply in a PCRA appeal, that discussion is not mandatory authority in the present case.

The current version of Rule 1925 contains the following remand procedures in Subdivision (c):

> (1) An appellate court may remand in either a civil or criminal case for a determination as to whether a Statement had been filed and/or served or timely filed and/or served.
>
> (2) Upon application of the appellant and for good cause shown, an appellate court may remand in a civil case for the filing nunc pro tunc of a Statement or for amendment or supplementation of a timely filed and served Statement and for a concurrent supplemental opinion.
>
> (3) If an appellant in a criminal case was ordered to file a Statement and failed to do so, such that the appellate court is convinced that counsel has been per se ineffective, the appellate court shall remand for the filing of a Statement nunc pro tunc and for the preparation and filing of an opinion by the judge.

Pa.R.A.P. 1925(c)(1)-(3).

Instantly, the exceptions in Paragraphs (c)(1) and (2) do not apply. There is no indication that PCRA counsel has attempted to comply with the PCRA court's order for a Rule 1925(b) statement. *See id.* 1925(c)(1). Further, assuming that a PCRA appeal is civil in nature, PCRA counsel has not applied for, nor attempted to show good cause for, his failure to do so. *See id.* 1925(c)(2). Although the applicability of Paragraph (c)(3) in a PCRA appeal is in doubt, *see Hill*, 16 A.3d at 495 n.14, this case presents similar efficiencies to a criminal direct appeal. Specifically, the failure to submit a Rule 1925(b) statement results in waiver of all claims, and PCRA counsel's abandonment could give rise to a PCRA-time bar exception under *Bennett* and a reinstatement of Appellant's PCRA appeal rights. Notwithstanding PCRA counsel's failure to file a Rule 1925(b) statement, the PCRA court addressed all claims raised in this appeal. Therefore, we decline to find waiver based on Rule 1925(b)(4)(vii) and will proceed to consider the issues raised in this appeal.

Our standard of review is as follows:

> [A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. . . .
>
>            \*     \*     \*
>
> . . . Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. In Pennsylvania, we have

- 11 -

refined the [***Strickland v. Washington***, 466 U.S. 668 (1984),] performance and prejudice test into a three-part inquiry. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. If a petitioner fails to prove any of these prongs, his claim fails. . . . To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

***Commonwealth v. Charleston***, 94 A.3d 1012, 1019 (Pa. Super. 2014) (some citations omitted), *appeal denied*, 104 A.3d 523 (Pa. 2014). However, "[a]n accused cannot refuse to cooperate with counsel in preparation of a particular trial strategy and then argue counsel's ineffectiveness for failing to pursue that course of action." ***Commonwealth v. Bomar***, 826 A.2d 831, 857 (Pa. 2003) (citations and quotation marks omitted).

Appellant first claims that the PCRA court erred in rejecting his claim that trial counsel failed to consult with him and prepare a defense. He asserts that "trial counsel's complete lack of attentiveness to the case prevented [trial counsel] from adequately reviewing the voluminous discovery" and prevented Appellant from assisting in his own defense. Appellant's Brief at 12. He concludes, "[T]rial counsel's irrational and unsound failure to prepare for a trial of this importance constitutes an abandonment of the minimum performance required . . . ." ***Id.*** at 13.

Appellant notes that trial counsel acknowledged the Public Defender's Office was understaffed and overworked, and he suffered "adverse physical and mental health conditions" while representing Appellant. *Id.* at 13. No relief is due.

Initially, we note that Appellant's brief fails to cite any law in support of his contention. *See* Pa.R.A.P. 2119(a). With respect to abandonment by trial counsel, however, it is well settled "that counsel's failure to prepare for trial is 'simply an abdication of the minimum performance required of defense counsel.' Moreover, . . . in a death penalty case, 'it is not possible to provide a reasonable justification for [defending a case] without thorough preparation.'" *Commonwealth v. Brooks*, 839 A.2d 245, 248 (Pa. 2003). "*Brooks* essentially announced the minimum action required by counsel to provide what is deemed constitutionally effective representation in capital cases: **counsel must conduct at least one face-to-face meeting with his client**." *Commonwealth v. Brown*, ___ A.3d ___, ___, 2016 WL 4429846 at *5 (Pa. Super. 2016).

However, this Court has noted that *Brooks* applies when trial counsel "failed to meet with his client 'at all.'" *Johnson*, 51 A.3d at 243. Thus, this Court has found *Brooks* inapplicable where trial counsel, in part, "met face-to-face with Appellant at his preliminary hearing, again at the prison [before jury selection, but] before trial and performed at least one telephone consultation." *Id.* at 245; *see id.* at 247 (Wecht, J., concurring).

- 13 -

Instantly, trial counsel appeared with Appellant at his preliminary hearing in May 2007. Although there was a gap of almost two years, trial counsel filed a motion for a mental health evaluation in February of 2009, and met with Appellant at prison twice in late March of 2009, once in April 2009 before jury selection, and again after jury selection, but before the presentation of evidence. The PCRA court noted that "[i]n early 2009, [Appellant] became dissatisfied with trial counsel and would not provide counsel with information, which included refusing to discuss the facts of the case, or his version of what happened on the date when the victim was killed." PCRA Ct. Op. at 21. The fact that Appellant refused to cooperate with trial counsel in 2009 is amply supported by the record.

To the extent Appellant asserts he is entitled to relief based on trial counsel's abandonment or abdication of his pretrial duties of preparation and consultation, we conclude no relief is due. *See Johnson*, 51 A.3d at 245. Nevertheless, although Appellant is not entitled to relief based on a *Brooks* claim, it is apparent his remaining claims assert individual claims of deficient preparation. Therefore, we will consider his remaining claims independently and as arguments in support of trial counsel's lack of preparation.

Appellant's second claim focuses on trial counsel's failure to seek suppression of evidence obtained under search warrants for his residence and his van. Appellant's Brief at 14. He asserts that the warrants were not timely executed within forty-eight hours. *Id.* Although this claim implicates

trial counsel's preparation, we agree with the PCRA court that Appellant cannot establish prejudice resulting from trial counsel's failure to file a pretrial motion to suppress. *See* PCRA Ct. Op. at 24.

A review of the record reveals that the untimely search of the van was actually litigated during a recess at trial. *See* N.T. Trial II, 4/28/09, at 81-93. The trial record, including the impromptu suppression hearing, established that search warrants were issued for Appellant's home and van on April 20, 2007. *Id.* at 65. State troopers searched Appellant's home that same day and seized Appellant's van. *Id.* at 65, 88. The van was stored in a garage in Butler County. *Id.* at 96. A second warrant was obtained in Butler County for the search of the van where it was impounded. An additional warrant was issued for a second search of Appellant's home, during which state troopers obtained, *inter alia*, samples of suspected blood that was discovered during the April 20th search of his home.

As to Appellant's home, we note that the record established that the search was conducted on April 20, 2007, the same day the first warrant was issued, and additional evidence was obtained during the execution of a second warrant for his home. The collection of the evidence under the second warrant was not challenged in the PCRA proceeding. Thus, Appellant has not established arguable merit to his claim that trial counsel should have sought suppression of the evidence collected from his home. *See* ***Charleston***, 94 A.3d at 1019.

As to the van, Appellant focuses on the discrepancy between the alleged issuance of the Lawrence County warrant on April 20th and the search that was conducted in Butler County three days later on April 23rd. Appellant presents no argument that the seizure of the van under the April 20th Lawrence County warrant was improper. He develops no argument that the April 23rd Butler County warrant was illegal or did not authorize the search inside his van when the van was impounded in that county. Therefore, we discern no basis to disturb the PCRA court's conclusion that Appellant did not establish prejudice resulting from trial counsel's failure to file a timely pretrial suppression motion. *See id.* at 1019.

Appellant's third claim focuses on trial counsel's decision "not to conduct any comparative analysis or testing of the forensic and DNA evidence." Appellant's Brief at 16. He asserts trial counsel's failure to prepare in this regard resulted in a "comprehensive failure to engage in **any** basic, skilled, or thorough cross-examination of **any** of the prosecution's witnesses. . . . As such trial counsel was not able to show any weakness or limitations of any testimony or challenge **any** witness." *Id.* No relief is due.

The PCRA court considered this issue as follows:

> [T]rial counsel stated that he did not feel it was necessary to obtain an expert witness in the field of DNA evidence as he had experience and education litigating cases containing that type of evidence. Trial counsel explained that he was familiar with DNA evidence and he did not believe that expert testimony would have been beneficial to [Appellant's] case. In addition, there is no indication that an expert in the field of forensics would have been

> helpful in preparing a defense as nothing was provided to the Court to demonstrate the testimony presented at trial by the Commonwealth was inaccurate in any way. [Appellant] appears to argue that there was evidence of a long hair that was not consistent with [Appellant] nor the victim which was found and an expert would have been helpful in demonstrating the unknown individual was responsible for the victim's murder, not [Appellant]. . . . [T]rial counsel was able to show through cross examination there was an unrelated hair found which was not from [Appellant].

PCRA Ct. Op. at 28-29.

We agree with the PCRA court that Appellant has failed to demonstrate any merit to his contention that further research or testing of the scientific evidence would have yielded any exculpatory or additional matters relevant to cross-examination. *See Commonwealth v. Chmiel*, 30 A.3d 1111, 1143 (Pa. 2011) ("The mere failure to obtain an expert rebuttal witness is not ineffectiveness. Appellant must demonstrate that an expert witness was available who would have offered testimony designed to advance appellant's cause." (citation omitted)); *Charleston*, 94 A.3d at 1019. Similarly, we have no basis to conclude that Appellant suffered actual prejudice based on trial counsel's failure to conduct further research or testing regarding the scientific evidence. *See id.* With respect to Appellant's assertion that trial counsel completely failed to cross-examine the Commonwealth's experts, the record supports the PCRA court's finding that trial counsel cross-examined the experts regarding the anomalous hair, as well as the

Commonwealth's failure to test the unrelated hair using mitochondrial DNA tests. Thus, the PCRA court properly denied relief on this claim.

Appellant, in his fourth claim, asserts that the PCRA court erred in denying relief on his claim that trial counsel failed to investigate a statement of a potential witness. No relief is due.

By way of background, this claim relates to a statement by Russell A. Wardman to the Pennsylvania State Police on March 5, 2007, during the investigation of the homicide. Wardman told troopers that on February 25, 2007, two days before the victim was last seen alive and four days before her body was discovered, he saw the victim in an altercation with an unidentified Caucasian male. According to Wardman, the victim asked the male, "What you want to do, kill me?" The male replied, "It doesn't sound too bad to kill you?" N.T. PCRA Hr'g I at 53.

At the PCRA hearing, trial counsel testified that he was aware of Wardman's statement prior to trial, but believed it did not merit further investigation in light of the DNA evidence linking Appellant to the victim. Trial counsel reiterated that Appellant refused to discuss the case with him, which impeded trial counsel's ability to place Wardman's statement in the context of a defense strategy. *Id.* at 54.

The Pennsylvania Supreme Court considered the interplay between law governing claims of a failure to investigate and a failure to call a witness.

> Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render

particular investigations unnecessary. Counsel's unreasonable failure to prepare for trial is "an abdication of the minimum performance required of defense counsel." [*Brooks*, 839 A.2d at 248]. The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance. Recently . . . this Court stated that:

> [C]ases . . . arguably stand for the proposition that, at least where there is a limited amount of evidence of guilt, it is *per se* unreasonable not to attempt to investigate and interview known eyewitnesses in connection with defenses that hinge on the credibility of other witnesses. They do not stand, however, for the proposition that such an omission is *per se* prejudicial.

Indeed, such a *per se* failing as to performance, of course, does not make out a case of prejudice, or overall entitlement to [PCRA] relief.

When raising a failure to call a potential witness claim, the PCRA petitioner satisfies the performance and prejudice requirements . . . by establishing that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

To demonstrate . . . prejudice, the PCRA petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case."

*Commonwealth v. Johnson*, 966 A.2d 523, 535-36 (Pa. 2009) (citations

omitted).

- 19 -

Instantly, the PCRA court denied relief on Appellant's claim for the following reasons:

> [Appellant] has failed to provide . . . a signed certification stating Russell Allan Wardman was able and willing to testify on his behalf. Moreover, [Appellant] failed to provide a certification setting forth the substance of Mr. Wardman's proposed testimony. Although, it is apparent that the witness exists as he provided a statement to the police officers when they were investigating the victim's murder, there is no indication that he was available to testify or that he was willing to testify on [Appellant's] behalf. [Appellant] also failed to present any testimony from Mr. Wardman during the hearings on the [Appellant]'s PCRA Petition to demonstrate that his testimony would have aided [Appellant] at trial. Therefore, [Appellant] has failed to establish that trial counsel was ineffective for failing to interview Mr. Wardman or failing to call him as a witness at trial.

PCRA Ct. Op. at 30-31.

We add that at the PCRA hearing, trial counsel explained his decision not to pursue an investigation of Mr. Wardman or use his statement to police in the following exchange with PCRA counsel.

> [Trial counsel]: I never did anything with this report because of subsequent events.
>
> Q What subsequent events?
>
> A The DNA match, the searches, all these things.
>
> Q So because the DNA matched [Appellant], you made an independent determination that that was sufficient? You were satisfied with the Commonwealth's investigation, that's it?
>
> A No. Simply—you know, you have to develop a theory of the case.

- 20 -

Q What was your theory?

A You have to probe for—

Q What was your theory, Mr. Falls?

A Well, due to the lack of cooperation from [Appellant], it was very difficult to garner a theory of the case because when the time came for him to discuss the evidence in this case, he was so estranged from me and my office that he refused to help.

Q So it sounds as if it was [Appellant's] problem, not your problem?

A Quite the opposite, it was my problem and not [Appellant's] problem.

N.T. PCRA Hr'g I at 54-55.

We further note that in explaining his limited cross-examination of the

Commonwealth's witnesses, trial counsel noted:

[T]he most I ever got out of [Appellant] or [co-counsel] ever got out of [Appellant] is, well, I didn't do it; put me on the stand and I'll say what happened. Well, I need to know what happened. If I start—If I start saying, so, I can't develop a theory of the case without once I get an understanding of what the Commonwealth is going to be, what is our potential response to that? Is he going to say, well, you know, I knew she was dead, so I lied about whether I knew her. You know, I mean, I really—I had to have something from [Appellant]. What his position was as to what happened is going to dictate what I'm going to challenge, what I'm not going to challenge, so I never was a person to ask a lot of questions, but I was afraid that any question I asked may be in two days, be contradicted by [Appellant] himself.

\* \* \*

I couldn't do anything that might come back to haunt the defense, and I didn't know if there was going to be a

- 21 -

> defense, and if so, what it was going to be, which limited me.

N.T. PCRA H'rg I at 83, 87.

Lastly, we reiterate that the record established that Appellant initially intended to testify at trial and assert Crystal Black, his girlfriend, killed the victim. N.T. *Voir Dire* VI at 23.

Although Appellant's frustration with the lack of communication with trial counsel for nearly two years before trial was understandable, and certainly highlights the difficulties in implementing the right to counsel, we are constrained to conclude that Appellant failed to demonstrate constitutionally deficient assistance of counsel. *See Charleston*, 94 A.3d at 1019. Trial counsel's hesitation in developing and implementing a theory of the case when Appellant indicated he wished to testify but refused to cooperate with trial counsel was reasonable. *See Bomar*, 826 A.2d at 857. Moreover, the record confirms trial counsel's belief that Appellant initially intended to testify at trial and inculpate his girlfriend in the killing. Under these circumstances, Appellant cannot establish that the failure to investigate the Wardman statement or use the statement at trial was unreasonable. Accordingly, we discern no basis to conclude that the PCRA court erred when denying relief based on this claim.

Appellant's fifth claim focuses on trial counsel's failure to object to the seating of the juror whom the District Attorney contacted during a campaign phone call before trial. Appellant contends that trial counsel's failure to

object resulted in waiver of an issue for direct appeal. Appellant's Brief at 18. No relief is due.

The PCRA court issued the following opinion on this issue.

> In the case *sub judice*, then District Attorney John J. Bongivengo, Esquire, reported to the [c]ourt that he was making general phone calls to registered voters concerning his reelection campaign for the Democratic primary election being held on May 19, 2009, when he attempted to call Edward Fisher around 6:00 p.m. on April 24, 2009. A female answered the telephone at that time and then District Attorney Bongivengo identified himself and explained that he was running for reelection. He also inquired as to how the woman believed he was performing as District Attorney. According to Attorney Bongivengo, she responded by saying that she saw him in court and was impressed by Attorney Bongivengo. Upon further inquiry, she explained that she was on the jury for the [Appellant's] homicide trial. At that time, Attorney Bongivengo instructed her that he should not be speaking with her and the conversation concluded. Attorney Bongivengo informed the [c]ourt of that occurrence as soon as he could, which was April 27, 2009.[ ] The juror was identified as Roberta Fisher. The [c]ourt called Ms. Fisher into Chambers along with William J. Flannery, Esquire, co-counsel for the Commonwealth, and trial counsel. Upon questioning by the [c]ourt, Ms. Fisher indicated that she spoke with Attorney Bongivengo concerning his reelection campaign and it had nothing to do with the [Appellant]'s homicide trial. At that time, she did not make any expression as to whether she would vote for Attorney Bongivengo and she did not recall making any indication as to whether or not Attorney Bongivengo was doing a good or bad job during jury selection. Ms. Fisher informed the [c]ourt that the communication between her and Attorney Bongivengo would not affect her ability to be a fair and impartial juror and she would not favor one side over the other due to that communication.
>
> It is apparent from the record that Ms. Fisher's impartiality as a juror was not affected by the communication she had with Attorney Bongivengo as the

conversation lasted approximately one minute and was concluded once it was known that Ms. Fisher was a juror in [Appellant]'s case. In addition, they did not speak about the substance of the case in any manner and it must be noted that testimony did not commence in [Appellant's] trial until the following Monday, which was April 27, 2009. Ms. Fisher also indicated that she was unaffected by the conversation and initially thought "it might have been a prank." She informed the [c]ourt that the conversation would not affect her ability to be a fair and impartial juror. Moreover, she explained that she would not be more likely to favor one side over the other as she works with the Commonwealth everyday for her job as an online messenger site for the Pennsylvania Department of Transportation. There is no indication on the record that the communication in question influenced Ms. Fisher in any manner and she was able to act as a fair and impartial juror. Thus, trial counsel was not ineffective for failing to request a mistrial on the basis of Ms. Fisher's contact with Attorney Bongivengo.

PCRA Ct. Op. at 32-34.

Appellant's argument, which again lacks any citation to law, fails to address the standards for disqualifying a juror, and fails to frame any claim directed toward an abuse of discretion or error in the PCRA court's ruling. *See* Appellant's Brief at 18-19. In any event, we have reviewed the record and discern no basis to disturb the trial court's determination that the juror was able to remain fair and impartial despite the contact. ***See Commonwealth v. Janda***, 14 A.3d 147, 162 (Pa. Super. 2011) (reiterating that "[t]he decision on whether to disqualify is within the discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion" (citation omitted)). Therefore, Appellant's underlying claim lacks

- 24 -

arguable merit and fails to establish any prejudice with respect to Appellant's direct appeal. *See Charleston*, 94 A.3d at 1019.

Appellant's sixth claim focuses on trial counsel's failure to develop a record to assert a *Batson* challenge. As noted by the PCRA court, this claim was utterly undeveloped and Appellant failed to establish arguable merit by presenting any evidence regarding the prospective jurors, the composition of the jury, or the Commonwealth's exercise of its strikes. *See Commonwealth v. Johnson*, 139 A.3d 1257, 1282 (Pa. 2016) (reiterating that PCRA petitioner bears burden of establishing *prima facie* **Batson** violation to assert claim of ineffectiveness for failure to object based on *Batson*). Thus, we agree with the PCRA court that no relief is due.

Appellant's final claim is that trial counsel was ineffective for failing to withdraw from representation based on the Public Defender's Office's representation of the victim in two prior matters. We agree with the PCRA court that Appellant did not establish merit to this claim.

The Pennsylvania Supreme Court has stated:

> "A defendant cannot prevail on a conflict of interest claim absent a showing of actual prejudice." In **Commonwealth v. Hawkins**, . . . 787 A.2d 292 ([Pa.] 2001), this Court reiterated that while "it is true that prejudice is presumed when counsel is burdened by an actual conflict of interest, this is only if the defendant demonstrates that counsel 'actively represented conflicting interests' and 'that an actual conflict of interest adversely affected his lawyer's performance.'"

- 25 -

***Commonwealth v. Spotz***, 896 A.2d 1191, 1231-32 (Pa. 2006) (citations omitted).

Instantly, Appellant established that the Public Defender's Office **previously** represented the victim. There was no dual representation. Aside from his belief that this former representation "adversely impacted his relationship with trial counsel[,]" Appellant proffers no support for finding that the former representation impacted trial counsel's representation in the present matter. ***See*** Appellant's Brief at 21. Therefore, no relief is due.

In sum, we have reviewed Appellant's claim of abandonment and his individual claims of ineffective assistance of counsel and found neither warrant relief either individually or collectively. Accordingly, we affirm the order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2016