J-S20041-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KENNY R. R. SHIELDS | : | No. 3690 EDA 2018 |

Appeal from the Order Entered December 5, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  Cp-51-CR-0002482-2008

BEFORE:  SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED AUGUST 4, 2020**

The Commonwealth appeals the order granting Kenny R. R. Shields relief under the Post Conviction Relief Act ("PCRA") in the form of a new trial.[1] The Commonwealth argues the PCRA court did not apply the appropriate standard in determining Shields had been deprived his right to effective assistance of trial counsel. We reverse and remand.

The Commonwealth charged Shields in 2006 with first-degree murder[2] and related offenses for his involvement in the shooting death of Thomas Faison, and gave notice of intent to pursue the death penalty. The trial court appointed James S. Bruno to represent Shields. Approximately two weeks

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9545.

[2] 18 Pa.C.S.A. § 2502(a).

before trial, the Commonwealth withdrew its notice of intent to seek the death penalty.

Shields was tried before a jury along with two co-defendants: Maurice Lewis and Stephon Bennett. The Commonwealth presented evidence that in December 2005, Shields, Lewis, and Bennett went to Faison's house, intending to rob him. During the confrontation, Lewis was shot in the stomach, and Faison was shot in the hand and chest and died. Lewis and Shields fled, and reported to police that they had been robbed after getting off a bus and Lewis had been shot during the robbery. However, at Faison's house, police found a jacket with bullet holes and blood that matched Lewis's DNA.

The Commonwealth introduced statements that Shields, Lewis, and Bennett made to the police, in which they admitted to being involved in the plan to rob Faison but blamed the shooting on one another. The Commonwealth also introduced witness statements relating Shields' incriminating statements.

The Commonwealth was unable to locate one witness, Sabrina Clyburn, for trial, and thus introduced her testimony via the transcripts of the preliminary hearings. Clyburn had testified that before the shooting she was walking with three girlfriends, including Katrina Shiver, to a store. As they were walking, she overheard Shields, Lewis, and Bennett, who were walking fifteen feet behind her, discussing robbing Faison. After she left the store, Clyburn, alone, walked by Faison's house, where she saw Shields, Lewis, and Bennett, standing outside, wearing masks and gloves. Clyburn saw Lewis

enter the house, and heard sounds of an argument and a gunshot. She saw Shields and Bennett run into the house, and heard a second gunshot. She then ran away from the house. At trial, Shiver testified in rebuttal that she had not been with Clyburn that evening.

The court conducted a colloquy on Shields' decision not to testify. Shields stated in open court that he understood he had the right to testify, he had discussed his decision not to testify with Attorney Bruno, and he was satisfied with Attorney Bruno's advice and representation.

The jury found Shields guilty, and the court sentenced Shields to serve life imprisonment without the possibility of parole. We affirmed Shields' judgment of sentence, and the Supreme Court of Pennsylvania denied review.

Shields timely filed the subject, pro se PCRA Petition. The court appointed counsel, who filed an Amended Petition. In the Amended Petition, counsel argued that Shields was deprived of his right to assistance of counsel during trial, alleging Attorney Bruno had no communication with Shields until the day of his trial, and failed to conduct a pretrial investigation or prepare a defense.[3]

The PCRA court held an evidentiary hearing, at which Shields and Attorney Bruno testified. Shields testified that Attorney Bruno had not met or

_____

[3] PCRA counsel later filed a no-merit letter, stating his belief that Attorney Bruno's actions had not prejudiced Shields. **See** Letter, 5/24/18. However, PCRA counsel did not request to withdraw from representation, and continued to represent Shields throughout the PCRA proceedings. **See** N.T., 10/31/18, at 41.

- 3 -

spoken with him before the preliminary hearing, when they met inside the courtroom. Shields said he had sent multiple letters to Attorney Bruno, and called him, but did not hear from Attorney Bruno again until trial. He also stated that Attorney Bruno did not give him a copy of the discovery file or the transcript of the preliminary hearing until jury selection began, and Shields was still reviewing discovery during trial. Shields further stated that Attorney Bruno did not tell him before trial that he would be tried with co-defendants, or that he had been facing the death penalty. Shields testified he met with Attorney Bruno three or four times in the consultation booth during jury selection and trial. *See* N.T., 8/21/18 at 53.

Regarding trial preparation and performance, Shields said he believed that Attorney Bruno should have investigated certain witnesses and cross-examined some Commonwealth witnesses on specific points. Among other things, Shields claimed that Attorney Bruno had not attempted to investigate as potential witnesses the women with whom Clyburn had said she was walking before the shooting, or the owner of the store Clyburn claimed to have been in.

Shields also testified that Attorney Bruno did not communicate the Commonwealth's offer for a plea deal until jury selection began. Shields stated that when he asked Attorney Bruno whether he should take the Commonwealth's offer of a 20-40 year sentence, Attorney Bruno simply replied, "We got this." N.T., 10/31/18, at 13. Shields testified that if he had

known what evidence the Commonwealth was intending to put forth at trial, he would have taken the offer and pled guilty.

In addition, Shields testified at the PCRA hearing that Attorney Bruno did not discuss with him his right to testify at trial until "right before" the court's colloquy. N.T., 8/21/18, at 54. Shields stated that he had not understood his right to testify, and that he had wanted to take the stand at trial. Shields stated he would have testified at trial in accordance to his initial statement to the police, and told the jury that he and Lewis had not participated in Faison's death, but had been robbed that night. Shields acknowledged he had not told Attorney Bruno that he had wanted to testify. Shields also admitted that during the colloquy, he told the court he did not want to testify, and that he had an opportunity to discuss his decision with Attorney Bruno. Shields agreed that if he had testified, the Commonwealth would have cross-examined him regarding a previous incident of assault.

Attorney Bruno testified that although it was his general practice to meet with clients between the preliminary hearing and trial, he could not specifically remember whether he met with Shields between his preliminary hearing and trial. Attorney Bruno also could not remember whether he spoke to Shields on the telephone before trial, but recalled that he frequently spoke to Shields' mother. Attorney Bruno testified it was his practice to send his clients discovery, he believed he had sent discovery to Shields before trial, and he recalled having given it to Shields' mother. Attorney Bruno stated that he did remember meeting with Shields on the day of the preliminary hearing, and

each day of the four days of jury selection and trial. During that time, they went through discovery and discussed potential witnesses.

Regarding his trial strategy, Attorney Bruno explained that he had attempted to show that the Commonwealth witnesses were not credible, blame the murder on the co-defendants, and emphasize that there was no physical evidence linking Shields to the shooting. Attorney Bruno testified that prior to trial, he litigated a motion to suppress Shields' self-incriminating statement to the police, and convinced the Commonwealth not to seek the death penalty. Attorney Bruno recalled he had objected to the admission of Clyburn's preliminary hearing testimony, and called Shiver as a witness to rebut her testimony. Attorney Bruno testified that he discussed with Shields whether he wanted to testify at trial, and recalled that it was the trial court's practice to colloquy the defendants regarding their right to testify.

Shields' PCRA counsel argued Shields had been deprived effective assistance of counsel because Attorney Bruno had failed to send Shields discovery and meet with him before trial. Shields' counsel further argued that due to Attorney Bruno's failings, Shields did not have adequate opportunity to accept a plea deal, and had not made a knowing, intelligent, and voluntary decision to waive his right to testify. However, Shields' counsel conceded that he would not be "able to bring forth a witness that absolutely would contradict the evidence which was put forth [against Shields]." N.T., 10/31/18, at 40.

The PCRA court granted Shields a new trial. The PCRA court's order granting relief does not state the grounds for the court's decision. The PCRA court also announced its decision in open court, but stated only the following:

> This is a troubling case for the following reason: Jim Bruno is a fellow that I always had respect for, always, always, always, and we all know Jim fell on hard times. I think those hard times, unfortunately, affected his representation of the defendant in this matter, and I am going to grant defendant a new trial.

N.T., 12/5/18, at 3.

The Commonwealth appealed, and presents the following question:

> Did the PCRA court err by granting defendant new trial because it opined that trial counsel's handling of the case was affected by personal issues where the court did not explain what actions or inactions of counsel were "affected;" did not find prejudice; there was compelling evidence of defendant's guilt; and defendant's assertions of ineffectiveness were unsupported by evidence and/or contradicted by the record?

Commonwealth's Br. at 7.[4]

The Commonwealth argues that **Commonwealth v. Brooks**, 839 A.2d 245 (Pa. 2003), which addresses ineffectiveness based on failure to have a pre-trial meeting with a defendant in a capital trial, does not apply to Shields' non-capital case, and regardless, Attorney Bruno surpassed the minimal amount of pre-trial contact required by **Brooks** and its progeny. The Commonwealth argues Shields' ineffectiveness claims were therefore subject

---

[4] The judge who presided over Shields' trial and PCRA proceedings retired, and did not author a Rule 1925(a) opinion.

to analysis under **Strickland**[5] and the PCRA court erred in awarding Shields a new trial without finding any specific conduct by Attorney Bruno prejudiced Shields. According to the Commonwealth, Shields did not prove the alleged failings by Attorney Bruno caused prejudice, given the compelling evidence of guilt presented at trial, and the lack of contrary evidence presented at the PCRA hearing. The Commonwealth adds that Shields did not prove the Commonwealth extended a plea offer to him, and failed to examine Attorney Bruno on that point. The Commonwealth further argues that Shields did not tell Attorney Bruno he wanted to testify in his own defense, and told the trial court during the colloquy that he had elected not to testify.

We review a PCRA court's decision to grant relief to determine "whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." **Commonwealth v. Mason**, 130 A.3d 601, 617 (Pa. 2015) (quoting **Commonwealth v. Hanible**, 30 A.3d 426, 438 (Pa. 2011)). We must view the PCRA court's findings and the record evidence in the light most favorable to the prevailing party, but "we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Id.** (quoting **Commonwealth v. Roney**, 79 A.3d 595, 603 (Pa. 2013)).

---

[5] **Strickland v. Washington**, 466 U.S. 668 (1984); **see also Commonwealth v. Pierce**, 527 A.2d 973 (Pa. 1987).

We conclude that, as a matter of law, Shields did not plead and prove that he was deprived of the right to effective assistance of counsel,[6] and the PCRA court therefore erred in vacating Shields' judgment of sentence. We first consider Shields' claim that he was deprived his right to effective assistance of counsel because Attorney Bruno failed to meet with him or communicate with him before trial. We agree with the Commonwealth that the standard set forth in **Brooks** does not apply, because Shields was not facing the death penalty.

In **Brooks**, the defendant claimed his counsel was ineffective for failing to meet with him at all before his capital trial; counsel confirmed that he could only recall having had one 20- to 30-minute telephone conversation with the defendant prior to trial. Brooks had then waived his right to counsel and represented himself at trial, and the jury had found him guilty. On appeal, the Supreme Court vacated his conviction and death sentence, holding that counsel had been ineffective for failing to meet with his client "even once

_____

[6] As we have previously explained,

> The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." Moreover, Article I, Section 9 of the Pennsylvania Constitution provides in relevant part that "[i]n all criminal prosecutions the accused hath a right to be heard by himself and his counsel[.]" The Pennsylvania Supreme Court has held that with respect to the right to counsel, Article I, Section 9 provides the same level of protection to criminal defendants as does the Sixth Amendment.

*Commonwealth v. Brown*, 145 A.3d 196, 198 n.2 (Pa.Super. 2016), appeal granted.

before his trial on capital charges." ***Brooks***, 839 A.2d at 250; ***see also id.*** at 249 n.7 ("[A]n attorney who does not meet in person with his client *at all* prior to a capital trial simply cannot be deemed sufficiently prepared to defend his client's life").

***Brooks*** emphasized that its holding applied where the Commonwealth sought to have the death penalty imposed:

> Indeed, the very nature of a capital case, typically quite involved and always subjecting the defendant to the possibility of death, clearly necessitates at least one in-person meeting between a lawyer and his client before trial begins. Without such a meeting, there is little to no hope that the client will develop a fundamental base of communication with his attorney, such that the client will freely share important information and work comfortably with the lawyer in developing a defense plan. Moreover, only a face-to-face meeting allows an attorney to assess the client's demeanor, credibility, and the overall impression he might have on a jury. This is of particular importance in cases in which the client may take the stand in his defense or at the penalty phase in an attempt to establish the existence of particular mitigating circumstances.

***Id.*** at 249. The holding of ***Brooks*** thus applies only to those cases in which the Commonwealth was pursuing the death penalty. ***See, e.g., Brown***, 145 A.3d at 198 (reversing based on ***Brooks***), *appeal granted*, 165 A.3d 868 (Pa. 2017), *and discontinued*, No. 6 EAP 2017 (filed April 18, 2017); ***Commonwealth v. Johnson***, 51 A.3d 237, 243-44 (Pa.Super. 2012) (*en banc*) (distinguishing facts of ***Brooks***).

As Shields was not facing the death penalty at the time of trial, his ineffectiveness claims are subject to the ***Strickland*** standard. Shields had the burden of establishing that there was "beneficial information or issues that

counsel should have presented had he been prepared adequately, which would have changed the outcome of the trial." ***Commonwealth v. Elliott***, 80 A.3d 415, 432 (Pa. 2013); ***see also Commonwealth v. Ligons***, 971 A.2d 1125, 1137 (Pa. 2009) (stating that counsel is presumed effective, and it is a petitioner's burden to prove otherwise). To prove counsel ineffective for failing to call a witness, Shields was required to show:

> (1) that the witnesses existed; (2) that the witnesses were available; (3) that counsel was informed of the existence of the witnesses or should have known of the witnesses' existence; (4) that the witnesses were available and prepared to cooperate and would have testified on [Shields'] behalf; and (5) that the absence of the testimony prejudiced [Shields].

***Commonwealth v. Pursell***, 724 A.2d 293, 306 (Pa. 1999).

At the PCRA hearing, Shields argued that counsel failed to produce certain witnesses or more successfully cross-examine certain witnesses. However, Shields did not produce these witnesses at the PCRA hearing, or even any other evidence, aside from his testimony, about the testimony he claims those witnesses would have given. Even if we indulge in the assumption that Shields established every other element of his ineffectiveness claims, he failed to establish prejudice, *i.e.*, that there was a reasonable probability that if there had been additional questioning or witnesses presented by Attorney Bruno, the jury would not have found him guilty. This is particularly so given the amount of evidence introduced against him at trial, including Clyburn's eyewitness testimony, several accounts of Shields' self-incriminating statements, and the fact that the blood on the jacket found at the crime scene

- 11 -

belonged to Lewis, whom Shields said he was with that night. Shields' PCRA counsel even admitted during argument that he was unable to produce evidence that would have changed the outcome of trial.

Without establishing prejudice, the claims related to Attorney Bruno's failure to meet with Shields or prepare for trial cannot provide the basis for a finding of ineffectiveness. We therefore hold that insofar as the PCRA court granted relief on the basis that Attorney Bruno failed to meet with Shields, the trial court erred.

We turn to Shields' argument that counsel was ineffective for failing to more thoroughly discuss the details of the case when communicating the Commonwealth's offer of a plea deal. "[C]ounsel has a duty to explain the relative advantages and disadvantages of accepting or rejecting a plea offer and . . . failure to do so may render counsel ineffective." **Commonwealth v. Lewis**, 708 A.2d 497, 501 (Pa.Super. 1998). The **Strickland** test governs whether a defendant's right to effective assistance of counsel during the plea bargaining process has been denied. **Commonwealth v. Feliciano**, 69 A.3d 1270, 1276 (Pa.Super. 2013). Where the defendant rejected a plea offer, he must show prejudice by establishing that were it not for the ineffective advice, there is a reasonable probability that he would have accepted the offer, the Commonwealth would not have withdrawn it, and the court would have accepted the terms and imposed a sentence that was less severe than the sentence that was actually imposed. **Id.** at 1276-77.

At the PCRA hearing, Shields testified that Attorney Bruno communicated the Commonwealth's offer to him, but did not adequately discuss the Commonwealth's evidence against him and advised him not to accept the offer because, as Shields claimed Attorney Bruno put it, "We got this." N.T., 10/31/18, at 13. However, Shields did not present any evidence at the PCRA hearing that if he had accepted the alleged offer, the Commonwealth would not have withdrawn it, or that the court would have accepted the terms of the offer. **Feliciano**, 69 A.3d at 1276-77. Shields also failed to question Attorney Bruno regarding what advice he gave Shields regarding an offer, and his reason for that advice. A court should not find counsel ineffective if counsel has not been given the opportunity to explain whether there was a strategic basis for his action or inaction, unless the record plainly belies any rational reason. **See Hanible**, 30 A.3d at 442; **Commonwealth v. Postie**, 200 A.3d 1015, 1023 (Pa.Super. 2018) (*en banc*). As Shields failed to put forth evidence regarding the reasonable basis or prejudice aspects of his claim, the record does not support a finding of ineffectiveness in relation to the alleged plea offer.

Finally, we consider Shields' argument that Attorney Bruno provided ineffective assistance when advising Shields not to testify. To support such a claim, the defendant "must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." **Commonwealth v. Nieves**, 746 A.2d 1102, 1104 (Pa. 2000). The waiver of

a constitutional right is knowing and intelligent when the defendant is "aware of both the nature of the constitutional right and the risk of forfeiting the same." *Commonwealth v. Szekeresh*, 515 A.2d 605, 607 (Pa.Super. 1986). Prejudice in this context means that but for counsel's ineffectiveness, the defendant would have made a different decision as to whether to testify. *Commonwealth v. Walker*, 110 A.3d 1000, 1005 (Pa.Super. 2015).

Shields asserted that Attorney Bruno did not discuss his right to testify until immediately before the court's colloquy, and that he had not fully understood his right to testify. However, at trial, Shields stated under oath and in open court that he understood his right to testify. *See* N.T., 1/7/18, at 133-35. He cannot now contradict that statement. *See Commonwealth v. Lawson*, 762 A.2d 753, 755 (Pa.Super. 2000) ("[A] defendant who made a knowing, voluntary, intelligent waiver of testimony may not later claim ineffective assistance of counsel for failure to testify"). Further, the colloquy occurred after the Commonwealth had rested, and Shields had seen the full extent of the evidence against him, which controverts his argument that he would have testified if he had understood the magnitude of the Commonwealth's case. Shields also stated at the PCRA hearing that he never told Attorney Bruno that he wanted to testify.

Therefore, Shields' claims that he did not understand his rights are belied by the record, and there is no support for a conclusion that Attorney Bruno interfered with Shields' ability to testify, or gave him advice that rendered his waiver unknowing or unintelligent. Moreover, Shields did not

question Attorney Bruno regarding his advice on this point, and we cannot presume Attorney Bruno would have had no basis for advising Shields not to testify. *Hanible*, 30 A.3d at 442; *Postie*, 200 A.3d at 1023.

As the record does not support a finding of ineffectiveness, we reverse the order granting relief, and remand for the PCRA court to reinstate Shields' judgment of sentence.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/04/2020