J-S06040-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GEORGE RANDALL ADAMS | : | |
| | : | |
| Appellant | : | No. 810 WDA 2025 |

Appeal from the PCRA Order Entered June 3, 2025
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001716-2021

BEFORE:  KUNSELMAN, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED:  March 12, 2026**

Appellant, George Randall Adams, appeals from the June 3, 2025, order entered in the Court of Common Pleas of Erie County dismissing his first petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9545, without an evidentiary hearing.  After our careful review, we affirm.

The relevant facts and procedural history are as follows: On June 12, 2021, a fire was set in Appellant's home along East Lake Road in Erie, Pennsylvania, and Appellant was charged via criminal complaint with two counts of arson-danger of death or bodily injury, one count of arson-bodily injury, two counts of aggravated assault, one count of arson-intent to destroy

_____

[*] Former Justice specially assigned to the Superior Court.

unoccupied building, one count of risking a catastrophe, one count of criminal mischief, and one count of recklessly endangering another person ("REAP").[1] Appellant, represented by Celena Sidun, Esquire, appeared for a preliminary hearing on July 7, 2021, at which time the parties executed a document entitled "Plea Agreement." Therein, the Commonwealth and Appellant agreed upon the resolution of the case as follows:

> [Appellant] will waive and plead guilty to Arson-[intent to destroy unoccupied building]-3301(c)(1) (F2), Risking Catastrophe (F3), Criminal Mischief (F3), and one count of REAP (M2). [Appellant] will also pay any and all restitution owed. If no plea, all charges reinstated.

Plea Agreement, filed 7/12/21, at 1. Relevantly, the "Plea Agreement" bears Appellant's signature dated July 7, 2021. The record reveals Appellant was represented by trial counsel, Celena Sidun, Esquire, during these negotiations.

On August 25, 2021, the Commonwealth filed an Information setting forth the charges agreed to in the "Plea Agreement." Thereafter, Appellant declined to enter a guilty plea, and instead, his case was listed for the June 2022 trial term. Accordingly, on June 13, 2022, the Commonwealth filed a motion to reinstate the charges. Therein, the Commonwealth referenced the parties' "Plea Agreement," Appellant's failure to abide by the "Plea Agreement," and the Commonwealth's intent to reinstate the original charges

---

[1] 18 Pa.C.S.A. §§ 3301(a.1)(1), 3301(a)(1), 2702(a)(2), 3301(c)(1), 3302(b), 3304(a)(1), and 2705, respectively.

as was provided for in the "Plea Agreement." On that same date, the Commonwealth filed an amended Information setting forth the charges provided for in the original complaint.

On June 21, 2022, Appellant, represented by Attorney Sidun, proceeded to a jury trial. At the conclusion of trial, the jury found Appellant not guilty of aggravated assault but guilty on all other charges set forth in the amended Information. On September 6, 2022, the trial court sentenced Appellant to an aggregate of 84 months to 168 months in prison, to be followed by one year of reentry supervision and restitution of $86,849.34. Appellant filed a timely post-sentence motion, which the trial court denied, and Appellant filed a timely, counseled direct appeal.

On appeal, Appellant claimed the Commonwealth presented insufficient evidence to sustain his conviction for risking a catastrophe. He also claimed the trial court erred by permitting the Commonwealth to introduce Appellant's text messages at trial before establishing *corpus delicti*; namely, that the fire was incendiary in origin. This Court found no merit to Appellant's claims, and, thus, we affirmed his judgment of sentence. **See Commonwealth v. Adams**, No. 1199 WDA 2022 (Pa.Super. filed 8/25/23) (unpublished memorandum). Appellant filed a petition for allowance of appeal, which our Supreme Court denied on March 5, 2024. Appellant did not file a writ of *certiorari*.

On June 13, 2024, Appellant filed a timely, *pro se* PCRA petition,[2] and the PCRA court appointed William John Hathaway, Esquire, to represent Appellant. On April 4, 2025, Attorney Hathaway filed an amended PCRA petition, and on April 30, 2025, the PCRA court gave notice of its intent to dismiss the petition without an evidentiary hearing pursuant to Pa.R.Crim.P. 907(1).

Appellant did not file a reply to the PCRA court's Rule 907(1) notice, and on June 3, 2025, the PCRA court dismissed Appellant's PCRA petition. On July 2, 2025, Appellant filed a timely, counseled notice of appeal, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following issues in his "Statement of the Questions Involved" (verbatim):

A. Whether the PCRA court erred in failing to find that counsel was ineffective in that [Appellant] asserts that, during his trial, he did not talk with defense counsel except right before any court hearing in the hallways for only 2 or 3 minutes, which led to [Appellant] noting that, in the investigative report, it was referenced that his neighbor, Stacy Sharples, stated that she saw [Appellant] carry gas cans into his house, but in her trial testimony, she pointed out the torch and notwithstanding this material discrepancy, defense counsel never impeached the witness?

---

[2] Although Appellant's *pro se* PCRA petition was docketed on June 16, 2024, the envelope in which the petition was mailed bears a postmark of June 13, 2024. Thus, we shall deem the *pro se* petition to have been filed on June 13, 2024. *See*, *e.g.*, *Commonwealth v. Chambers*, 35 A.3d 34, 38 (Pa.Super. 2011) ("[T]he prisoner mailbox rule provides that a *pro se* prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing.").

B. Whether the PCRA court erred in failing to conclude that counsel was ineffective in that [Appellant] asserts that the District Attorney said that he burnt down the house because the landlord was selling to someone else. [Appellant] recites that he and his wife were unaware of the landlord's intentions, but defense counsel failed to call any witness to support that lack of knowledge and refute the Commonwealth's theory of the case and purported motive of [Appellant]?

C. Whether the PCRA court erred in failing to find ineffective assistance of counsel predicated [on Appellant's] contention that defense counsel recommended that neither he nor any other defense witnesses be called at trial because of his drug history and prior criminal record?

D. Whether the PCRA court erred in failing to find ineffective assistance of counsel predicated on [Appellant's] argument that he was never offered a plea deal while defense counsel purportedly sent him a card enumerating everything from boot camp up to a life sentence? When [Appellant] inquired about a potential plea deal, defense counsel indicated he could receive sentencing exposure spanning everything outlined on that card.

Appellant's Brief at 2.

Initially, we note:

On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to our plenary review.

*Commonwealth v. Nero*, 58 A.3d 802, 805 (Pa.Super. 2012) (quotation marks and quotations omitted).

As relevant here, a PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the

circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). In reviewing Appellant's ineffective assistance of counsel claims, we are mindful that, since there is a presumption counsel provided effective representation, the defendant bears the burden of proving ineffectiveness. *Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282 (2010).

To prevail on an ineffective assistance claim, a defendant must establish "(1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate [her client's] interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." *Id.*, *supra*, 10 A.3d at 291 (citations omitted).

> We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case. [C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.

*Commonwealth v. Johnson*, 635 Pa. 665, 139 A.3d 1257, 1272 (2016) (citations omitted). *See Commonwealth v. Daniels*, 600 Pa. 1, 963 A.2d 409, 419 (2009) ("A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.") (citation omitted)). "A claim has arguable merit where the factual averments, if accurate, could

establish cause for relief." ***Commonwealth v. Stewart***, 84 A.3d 701, 707 (Pa.Super. 2013) (*en banc*) (citation omitted).

Further,

> To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

***Commonwealth v. Spotz***, 624 Pa. 4, 84 A.3d 294, 311-12 (2014) (citations, quotation marks, and quotations omitted). ***See Commonwealth v. Gribble***, 580 Pa. 647, 863 A.2d 455, 472 (2004) ("[A] defendant [raising a claim of ineffective assistance of counsel] is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings.") (quotation omitted)).

In his first issue, Appellant claims trial counsel did not adequately consult with him prior to or during trial. In this vein, he avers trial counsel met with him for only "2 to 3 minutes" in the hallway before each day of the proceedings. ***See*** Appellant's Brief at 8. He contends that, given the short meetings, he and counsel were not "on the same page." ***Id.*** Further, he claims that, "to exemplify the ensuing prejudice of [trial] counsel not being conversant," trial counsel failed to impeach Commonwealth witness Stacy Sharples regarding a discrepancy between the statements she made to the fire investigator and during her trial testimony. ***Id.*** Appellant claims he

reviewed the discovery materials and "was in a prime position" to point out the discrepancies between Ms. Sharples' pre-trial statement and her trial testimony; however, "[trial] counsel squandered this opportunity to utilize [Appellant] as a resource for trial preparation due to the general attitude of avoidance of Appellant except for several minute discussions." *Id.* at 9.

Appellant appears to rely on the legal precepts set forth in *Commonwealth v. Brooks*, 576 Pa. 332, 839 A.2d 245 (2003), in support of his claim. In *Brooks*, the defendant was charged with first-degree murder. Defense counsel "never once met with [the defendant] in person prior to his trial on capital charges" and recalled only one telephone conversation with the defendant. *Id*. at 249. Defense counsel explained "he had not been looking forward to spending any time alone with Mr. Brooks." *Id.* (citation and quotation marks omitted). The *Brooks* Court concluded defense counsel had no reasonable basis for failing to meet with the defendant, and the defendant suffered prejudice caused by defense counsel's failure. *Id*. at 249-50. Emphasizing the intricacies of a capital case, our Supreme Court reasoned as follows:

> [T]he very nature of a capital case…clearly necessitates at least one in-person meeting between a lawyer and his client before the trial begins. Without such a meeting, there is little to no hope that the client will develop a fundamental base of communication with his attorney, such that the client will freely share important information and work comfortably with the lawyer in developing a defense plan. Moreover, only a face-to-face meeting allows an attorney to assess the client's demeanor, credibility, and the overall impression he might have on a jury.

*Id*. at 249. **See also id**. at 250 (stating that "in order to prepare a defense to a charge of murder in the first degree, it is essential that at the very least, counsel meet with his client in person to, *inter alia*, gather information from the client, evaluate the client's demeanor, and try to establish a working relationship.").

This Court, sitting *en banc*, discussed the applicability of **Brooks** in **Commonwealth v. Johnson**, 51 A.3d 237 (Pa.Super. 2012) (*en banc*), a case in which Johnson—who was charged with first-degree murder—argued he was entitled to relief because his counsel did not meet with him in person until the night before his trial. We held:

> Our Supreme Court emphasized in **Brooks** that [the defendant's] attorney failed to meet with his client "at all." In this case, [counsel] represented [Johnson] at his preliminary hearing, conducted another face-to-face meeting at the prison with [Johnson] prior to trial, and performed at least one telephone consultation. While we acknowledge that more contact may have been advisable, we disagree…that the length and frequency of the consultations alone can support a finding of ineffectiveness. We further decline to read **Brooks** so rigidly that we are precluded from evaluating the substantive impact of the consultations [counsel] did perform.

**Johnson**, 51 A.3d at 243-44 (citations omitted). This Court concluded counsel's meetings with Johnson, even if limited, were clearly substantive, given that counsel hired a private investigator to locate an alibi witness and secured five witnesses for trial. **Id**. at 244.

In the case *sub judice*, unlike the defendant in **Brooks**, Appellant faced no capital charges. Appellant also acknowledges he met with trial counsel in

person prior to and during trial. *Cf. Brooks*, *supra*, 839 A.2d at 249 (indicating trial counsel "never once met with [the defendant] in person before his trial"). Specifically, he admits he met with counsel in the hallways before each court hearing for "2 to 3 minutes." Appellant's Brief at 8. As we stated in *Johnson*, the "length and frequency of [attorney] consultations alone" cannot support a finding of ineffective assistance of counsel. *Johnson*, 51 A.3d at 244.

However, we must consider the "substantive impact" of any meetings counsel had with Appellant. *Id.* We examine whether Appellant identified beneficial information or an issue that trial counsel would have discovered had she engaged in a more thorough pretrial consultation. *Johnson*, *supra*.

Here, Appellant claims that, because of the brevity of his discussions with counsel, counsel failed to recognize there were discrepancies in Ms. Sharples' pre-trial statements to the fire investigator and her trial testimony. Appellant's Brief at 8. Specifically, he claims that, in the fire investigator's report, it is noted that "one of the neighbors, Stacy Sharples,…stated to several firefighters, including me, that she saw the resident, [Appellant], carrying gas cans into the house 20-30 minutes before the fire started." Commonwealth Exhibit 3, at 2. However, during her trial testimony, Ms. Sharples stated that, prior to the fire, she saw Appellant carrying to "the back entrance of the house…propane tanks that were for a torch." N.T., 6/21/22, at 56.

- 10 -

Appellant claims that, because trial counsel did not communicate adequately with Appellant, who could have pointed out this discrepancy, trial counsel was unaware of the discrepancy, and, thus, counsel did not adequately impeach Ms. Sharples' trial testimony on this point. *Id.* at 9.

As the PCRA court found, Appellant is mistaken in his assertion that trial counsel failed to impeach Ms. Sharples on cross-examination regarding this issue. *See* PCRA Court Opinion, filed 4/30/25, at 4-5. Specifically, trial counsel cross-examined Ms. Sharples about what she saw Appellant carrying to the back of his house, and questioned her about why her trial testimony differed from her pre-trial statements in this regard. N.T., 6/21/22, at 66-67.

Additionally, it is noteworthy that, after Ms. Sharples testified, the Commonwealth called Fire Inspector Donald Sauer, who authored the fire investigation report at issue. On cross-examination, trial counsel specifically had the following relevant exchange with Fire Inspector Sauer:

> Q: Okay. You also as part of your Investigation spoke with Miss Sharples, Correct?
> A: Yes.
> Q: And I believe—
> A: Page 2.
> Q: Thank you. You stated that she saw [Appellant] carrying gas cans into the house?
> A: That's what she told me.
> Q: Okay. But, you didn't find any gas cans inside the house, correct?
> A: Correct.

N.T., 6/21/22, at 129.

- 11 -

Contrary to Appellant's contention, as is evident from trial counsel's cross-examination of Fire Investigator Sauer, trial counsel was aware of Ms. Sharples' pre-trial statements, which were memorialized in the fire investigator's report. Further, given Ms. Sharples had just testified prior to Fire Investigator Sauer, trial counsel was aware her trial testimony differed from her pre-trial statements. Accordingly, contrary to Appellant's claim, there is no indication that trial counsel's alleged lack of communication with Appellant led to any unawareness on counsel's part regarding the pre-trial statements made by Ms. Sharples and/or her trial testimony on this issue. Moreover, the record reveals trial counsel extensively cross-examined the Commonwealth witnesses at trial such that the meetings counsel had with Appellant had a "substantive impact." **Johnson**, **supra**. Therefore, Appellant has failed to demonstrate he is entitled to relief. **See Ali**, **supra**; **Johnson**, **supra**.

In his next issue, Appellant claims trial counsel was ineffective in failing to refute the Commonwealth's theory that Appellant set fire to the house because the landlord was selling it to someone else. Specifically, Appellant avers trial counsel should have called a witness; namely, Appellant, to testify that he was unaware of the landlord's intentions.[3] Appellant claims he was

_____

[3] As the PCRA court notes, aside from himself, Appellant has not identified any evidence or other witnesses, who would have been willing to testify as to Appellant's alleged lack of knowledge. **See** PCRA Court Opinion, filed 4/30/25,
*(Footnote Continued Next Page)*

- 12 -

"unduly influenced" by trial counsel's advice that Appellant not take the stand to avoid "opening the door to *crimen falsi* and his prior drug history." Appellant's Brief at 10.

This Court has observed:

> "The right of an accused to testify on his own behalf is a fundamental tenet of American jurisprudence and is explicitly guaranteed by Article I, Section 9 of the Pennsylvania Constitution." **Commonwealth v. Nieves**, 560 Pa. 529, 746 A.2d 1102, 1105 (2000). Significantly, "the presumption must always be against the waiver of a constitutional right," and we are bound to "place the burden of proving waiver on the Commonwealth." **Commonwealth v. Robinson**, 970 A.2d 455, 458 (Pa.Super. 2009) (*en banc*) (internal citations omitted). Thus:
>
> > The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

**Nieves**, **supra**, 746 A.2d at 1104 (internal citations omitted).

> [T]he appropriate standard for assessing whether a defendant was prejudiced by trial counsel's ineffectiveness regarding the waiver of his right to testify is whether the result of the waiver proceeding would have been different absent counsel's

_____

at 3. **Commonwealth v. Johnson**, 600 Pa. 329, 966 A.2d 523, 536 (2009) ("To establish that defense counsel was ineffective for failing to call a witness at trial, the PCRA petitioner must demonstrate that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.") (citation omitted)).

ineffectiveness, not whether the outcome of the trial itself would have been more favorable had the defendant taken the stand.

*Commonwealth v. Walker*, 110 A.3d 1000, 1005 (Pa.Super. 2015).

"It is well settled that a defendant who made a knowing, voluntary, intelligent waiver of testimony may not later claim ineffective assistance of counsel for failure to testify." *Commonwealth v. Lawson*, 762 A.2d 753, 755 (Pa.Super. 2000) (citations omitted).

Instantly, Appellant does not allege counsel interfered with his right to testify. Rather, he claims counsel's advice that he not testify to avoid opening the door for certain evidence was "so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." *Nieves*, *supra*, 746 A.2d at 1104. In finding Appellant was not entitled to relief, the PCRA court indicated the trial court conducted a thorough oral colloquy with Appellant regarding his right to testify, and Appellant acknowledged that the right to testify or not to testify was his decision alone. PCRA Court Opinion, filed 4/30/25, at 3. Our review of the record confirms the following colloquy occurred at the conclusion of the first day of trial:

> [DEFENSE COUNSEL]: Your Honor, just for planning purposes, I'm going to have no witnesses. I'm not going to call [Appellant].
>
> THE COURT: Okay. Well, we'll do a colloquy if you want tomorrow after they rested if you want me to do the colloquy at that point. Do you want me to do it now since we're here?
>
> [DEFENSE COUNSEL]: Whatever you prefer. I just wanted to indicate—
>
> THE COURT: All right. Why don't we do it right now. Just one less housekeeping matter that we have to worry about.

- 14 -

[DEFENSE COUNSEL]: Okay.

THE COURT: [Appellant], I'm going to address a few questions to you. Okay, sir. Thank you. Your counsel indicated you do not intend to testify; is that correct?

[APPELLANT]: Yes, sir.

THE COURT: All right. As you may know, the most—one of the most important things in any type of criminal trial is whether or not the defendant wants to testify. But, it's ultimately your choice, and you understand that as well?

[APPELLANT]: Yes, sir.

THE COURT: Certainly, you have the opportunity to talk to your counsel about what you want to do, but, ultimately, it comes down to you. Do you understand that?

[APPELLANT]: Yes, sir.

THE COURT: If you do not testify, what I will tell the jury is that it is entirely up to you in every criminal trial—"you" being the Defendant—whether or not to testify. The defendant has an absolute right based upon the constitution to remain silent. You must not draw any inference of guilt or any other inference adverse to the defendant because he did not testify in this case. That's what I'm going to tell the jury.[4] All right?

[APPELLANT]: Yes, sir.

THE COURT: All right. And it's your intention not to testify at this time?

[APPELLANT]: Yes, sir.

THE COURT: All right. And, of course, if he changes his mind—you're entitled to do that, sir, but at this point we just wanted to give you that little bit of background. All right?

[APPELLANT]: Thank you.

N.T., 6/21/22, at 142-44 (footnote added). Thereafter, Appellant did not testify.

---

[4] Subsequently, in its charge to the jury, the trial court so informed the jury. N.T., 6/23/22, at 5.

- 15 -

The record supports the PCRA court's conclusion that Appellant underwent an extensive colloquy regarding his desire not to testify in his own defense, as well as his understanding of the rights he was giving up. Appellant specifically acknowledged that he understood it was his decision alone as to whether he should testify. N.T., 6/21/22, at 142-44. The record establishes that Appellant knowingly, intelligently, and voluntarily waived his right to testify. Since Appellant knowingly, voluntarily, and intelligently waived his right to testify, he cannot now assert that trial counsel was ineffective for Appellant's decision not to testify. **See Lawson**, **supra**. Further, Appellant fails to demonstrate how the result of the waiver proceeding would have been different absent counsel's alleged ineffectiveness. **See Walker**, **supra**.

In his next issue, Appellant claims trial counsel was infective in falling to call witnesses on behalf of Appellant. As indicated *supra*,

> To establish that defense counsel was ineffective for failing to call a witness at trial, the PCRA petitioner must demonstrate that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

**Johnson**, **supra**, 966 A.2d at 536 (citation omitted).

- 16 -

Here, Appellant has not identified any witnesses or explained what testimony these unnamed witnesses would have offered.[5] Thus, Appellant is not entitled to relief on this claim of ineffectiveness. *Id.*

In his final claim, Appellant avers trial counsel was ineffective in failing to seek a plea offer. Appellant claims "there is nothing in this case that would have suggested the Commonwealth would not have been receptive to a plea agreement resolution of the case short of trial." Appellant's Brief at 13. Appellant claims that, had trial counsel sought a plea agreement, "[a] better result could have logically been attained instead of proceeding to trial and facing the prospect of [a] severe 7 years to 14 years sentence as was imposed in this instance." *Id.*

As the PCRA court found, "[Appellant's] claim that his [trial] counsel failed to obtain a plea deal is specious and belied by the record." PCRA Court Opinion, filed 4/30/25, at 2. Rather, as set forth *supra*, while represented by Attorney Sidun, on the day of Appellant's preliminary hearing on July 7, 2021, Appellant and the Commonwealth executed a "Plea Agreement." Therein, Appellant agreed to plead guilty to one count of arson, risking a catastrophe, criminal mischief, and REAP. In exchange, the Commonwealth agreed to

---

[5] To the extent Appellant again avers that trial counsel was ineffective in failing to call Appellant to testify in his own defense, as indicated *supra*, the PCRA court did not err in holding Appellant voluntarily, knowingly, and intelligently waived his right to testify. Thus, we decline to address the claim further. *See Lawson*, *supra*.

withdraw all remaining charges. Thereafter, Appellant apparently changed his mind and proceeded to a jury trial. The PCRA court's factual findings are supported by the record, and we agree there is no arguable merit to Appellant's claim of ineffectiveness.[6] ***See Stewart***, ***supra***.

For all of the foregoing reasons, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/12/2026

---

[6] To the extent Appellant contends he was unaware of the plea negotiations between trial counsel and the Commonwealth, we note the "Plea Agreement" bears his signature. Appellant has made no averment that someone signed the "Plea Agreement" with his name or there was any other irregularity in this regard.